In re EXENNIUM, INC., dba Axiom Television, Griffeys TV and Appliances, Griffeys House of Portables, Griffeys TV and Portables, Griffeys Electronics, Debtors.

KARBACH ENTERPRISES, a California limited partnership, Appellant,

v.

EXENNIUM, INC., Debtor and Irving Sulmeyer, Trustee, Appellees.

BAP No. CC–81–1296–HVG.

Bankruptcy No. LA–81–00731–JM.

United States Bankruptcy Appellate Panels of the Ninth Circuit.

Argued March 25, 1982.

Decided Aug. 13, 1982.

Filed Aug. 26, 1982.

Daniel H. Slate, Gendel, Raskoff, Shapiro & Quittner, Los Angeles, Cal., for appellant.

Joseph Bernfeld, Pacht, Ross, Warne, Bernhard & Sears, Inc., Max H. Rush, Sul-

meyer, Kupetz, Baumann & Rothman, Los Angeles, Cal., for appellees.

Before HUGHES, VOLINN and GEORGE, Bankruptcy Judges.

## OPINION

HUGHES, Bankruptcy Judge:

This appeal presents issues of bankruptcy administration relating to sales of property. We reverse the orders appealed. We first hold in part II that the appeals are not moot. We next hold in part III that debtor's attorney is ineligible to purchase property of the estate and that such a sale is void. In Part IV we discuss the effect of that holding on sales that were not appealed and, in part V, we cite the trustee's failure to conduct a public auction as an alternative basis for reversal.

## I.

### A.

Exennium, Inc. operated retail television and appliance businesses in four leased locations. On November 25, 1980, its attorneys, Pierson & Letteau, notified one of the lessors (Karbach Enterprises) that Exennium planned to assign its lease to a third party. They requested Karbach's consent as required by the lease. Karbach replied by requesting financial information about the third party. Nothing came of this exchange.

A voluntary petition under Chapter 11 was filed for Exennium, Inc. by Pierson & Letteau on January 22, 1981. The law firm thereafter filed a statement of affairs and schedules of creditors and assets. Sometime in February, Pierson & Letteau withdrew as attorneys of record for the debtor (as well as de facto attorneys for the debtor-in-possession) and were replaced by Joseph Bernfeld. Meanwhile, on February 5, the debtor consented to appointment of a trustee by the United States trustee.

The appointed trustee soon terminated business operations. According to Mr. Bernfeld, "the Debtor thereafter procured the interest of one of its attorneys, David

Pierson, in purchasing the physical assets and the lease contracts of the Debtor. David Pierson thereupon submitted an offer to the Trustee on or about the 16th day of April, 1981."

The trustee prepared and filed a notice of proposed sale, which was mailed by the clerk of the bankruptcy court to all creditors listed in the schedules and was published in a legal newspaper. The trustee did not otherwise undertake to notify anyone of the proposed sale. No objection or request for hearing before the court having been filed, the sale took place on the premises leased from Karbach on May 14.

Pierson successfully bid $50,000 for all of the property offered by the trustee, including all of the debtor's tangible personal property plus its name and goodwill, but excluding the four unexpired leases. Sale of the leases was continued to the following day in the trustee's office, at which time Pierson's offer of $78,000 for the leases was accepted. By letter of the same date, May 15, Pierson notified Karbach of his purchase.

None of the lessors received notice of the proposed sale for the reason that they were omitted by Pierson & Letteau from the debtor's schedule of creditors, the basis of the clerk's mailing.

### B.

Karbach filed an objection to the assumption or assignment of the leasehold interest on May 26 and, on June 18, an application to reopen the sale of the leasehold interests. Also in June, the trustee filed a motion for an order permitting assumption and assignment of the leases. All of the motions were heard initially on July 7, 1981 and were decided on August 17, 1981.

During the July 7 hearing, Karbach offered to buy its lease from the trustee for $50,000 net to the estate; this was explained as $50,000 cash plus a waiver of its administrative rent claim. The offer was opposed by the attorney for the debtor, Bernfeld, and apparently by the trustee. Prior to the continued hearing on August

17, the trustee notified the court that it now favored the Karbach offer. The trustee pointed out that Pierson's $78,000 could be fully consumed in curing defaults on the four leases and might not even be enough.

At the August 17 hearing, however, the trustee supported an amended offer by Pierson which not only obligated him to pay any sums over $78,000 needed to cure the rent defaults but to hold the estate harmless from certain claims by retail customers as well.

Meanwhile, the then attorney for the debtor, Bernfeld, strenuously opposed the Karbach offer. In addressing the court, he said:

> The debtor needs the leases to reorganize itself. Without the leases it is dead; without the Long Beach [Karbach] lease being protected it is dead...

Later:

> The present suggestion of the trustee is to confirm it to Mr. Pierson. We have an understanding with Mr. Pierson. He has already written in a letter under his own signature that he will make a reasonable deal with the debtor.

At the conclusion of the August 17 hearing, the court agreed to sign an order permitting the trustee to assume and assign the four leases. Even before that order was signed on August 31, however, Pierson's law firm wrote (on August 26) to Karbach's attorney:

> Since our court appearance of August 17, 1981 it has become increasingly problematical as to whether or not a reorganization can be effected. In the absence of such a reorganization Mr. Pierson, of course, would intend to sublease the subject premises...

This appeal, by Karbach, is from the order permitting assignment of the lease to Pierson. The court's rulings on Karbach's motion to reopen the sale is implicit in this order and is treated as such by the parties to the appeal.

## II.

Early in this appeal, the trustee (as well as the debtor) moved to dismiss the appeal on the grounds that Karbach had not obtained a stay pending appeal and that matter was therefore moot. The trustee relied on 11 U.S.C. § 363(m) and Bankruptcy Rule 805. We denied the motion without prejudice.

## A.

Subsection (m) of section 363 provides in part that the "reversal...on appeal of an authorization under subsection (b) ... of a sale or lease of property does not affect the validity of a sale or lease under such authorization...unless such authorization and such sale were stayed pending appeal."

Subsection (b) of section 363 provides that the trustee may sell property of the estate "other than in the ordinary course of business" after notice and hearing.

We do not understand Karbach to have appealed from any order authorizing the trustee to sell property other than in the ordinary course of business. (There was no order reflected in the record). It has appealed instead from the order confirming the sale to Pierson and from the order declining to reopen the sale.

Accordingly, the motion to dismiss the appeal is itself moot to the extent it relies on 11 U.S.C. § 363(m).

## B.

Bankruptcy Rule 805 provides, in relevant part: "Unless an order approving a sale of property...is stayed pending appeal, the sale to a good faith purchaser...shall not be affected by the reversal or modification of such an order on appeal..." Thus, in contrast with section 363(m), this rule applies to the actual sale (more accurately, to the order approving the actual sale) made pursuant to the authorization obtained under section 363(b).

B.R. 805 is inapplicable to the trustee's sale of personal property to Pierson because the trustee did not seek or obtain an order approving (confirming) that sale. The trustee did obtain an order permitting

assumption and assignment of the leases, however, which we consider equivalent to an order approving sale for purposes of B.R. 805.

However, the panel was advised that Pierson was maintaining the status quo while awaiting outcome of the appeal. That in itself would make B.R. 805 inapplicable. *In re Cada Investments, Inc.,* 664 F.2d 1158 (9th Cir. 1981).

Furthermore, we find it difficult to believe that one who is disqualified for public policy reasons to purchase can be a good faith purchaser under B.R. 805. Thus, B.R. 805 is inapplicable under the facts of this case.

### C.

■ Aside from the foregoing statute and rule, an appeal of an order confirming a bankruptcy sale is moot if the sale has been consummated and the purchaser is not before the court. *In re Royal Properties, Inc.,* 621 F.2d 984, 986 (9th Cir. 1980). Pierson is not a formal party to this appeal. However, as noted above, the transaction has not been consummated.

For the foregoing reasons, we again deny the trustee's motion to dismiss Karbach's appeal as being moot.

### III.

We next address the question of Pierson's qualification to purchase property of the estate. Karbach urges that "an attorney for the debtor has a very strong responsibility to act in no way inconsistent with that which he or she perceives to be in the best interests of the estate." The trustee defends Pierson's qualifications as a buyer by noting the absence of any provision in the Bankruptcy Code disqualifying "an attorney who has ceased representing the Debtor..." and noting the "overriding policy...that the estate realize[d] the greatest economic benefit from the sale of its assets..."

■ We reject the trustee's arguments and hold that Pierson was disqualified as a buyer and that the sales to him were void.

### A.

■ It is hornbook law that an attorney owes a duty to his client to take no action that is in conflict with the client's interests. An attorney who appears in court assumes additional duties to the court and to parties to the matter in which appearance is made. Finally, a debtor in chapter 11 may be a debtor-in-possession, in which event the debtor assumes the fiduciary duties of a trustee. 11 U.S.C. § 1107.

So long as he was attorney for Exennium, Inc., Pierson's primary duty was to his client. So long as he was attorney of record in the Chapter 11 case, he assumed additional duties to the court and to affected parties. While Exennium, Inc. was debtor-in-possession, i.e., until replaced by the trustee, Pierson's representation of Exennium, Inc. required that he not only act in the best interests of his client but of the estate as well. Finally, he was, however briefly, an officer of the court in the case from which this appeal is taken.

### B.

■ Two separate principles disqualify persons as buyers from bankruptcy estates. One, equitable jurisdiction over fiduciary relationships, would be present even if there were no court proceeding. When there is a court proceeding, public policy considerations also arise. This distinction is noted in *Donovan & Schuenke v. Sampsell,* 226 F.2d 804 (9th Cir. 1955), and in *In re Frazin & Oppenheim,* 181 F. 307 (2d Cir. 1910), cited in the former case.

With respect to disabilities flowing from fiduciary duties, it was stated that "not only trustees, strictly speaking, but agents, attorneys and all persons acting in behalf of other persons and obtaining confidential information concerning their affairs cannot purchase their property except under certain restraints..." *In re Frazin & Oppenheim,* supra, at 309.

In *Donovan & Schuenke,* the court said at page 808:

This does not depend upon the statute relating to bankruptcy nor the principles of bankruptcy law or regulation. Rather, it depends upon...the established law of equity, which applies to all fiduciaries...

The existence of a bankruptcy proceeding raises considerations of public policy. As stated by the court in *Frazin & Oppenheim*, supra, at 310:

> [N]o consideration of public policy is deeper grounded upon fundamental principles ... than that courts and court officers must be disinterested in the management of estates committed to their charge. It cannot be permitted that officers appointed by courts to perform duties regarding property in custody of the law should speculate therein. It cannot be permitted that court officials should use their official positions for personal profit. The question is not one of fraud or good faith, of gain or loss to the estate, in a particular instance. The rule goes far deeper than that. It is applicable in every case in order to secure and maintain the impartial administration of justice.

\* \* \* \* \* \*

Upon no courts is the obligation to enforce these principles of public policy greater than upon the courts of bankruptcy of the United States.

This public policy is expressed in 18 U.S.C. § 154, which makes it a misdemeanor for any officer of the court to purchase, directly or indirectly, assets from a bankruptcy estate. An attorney of record in a bankruptcy case, including an attorney for the debtor, is of course an officer of the court.

■ Taken together, these principles have produced the following rule in the Ninth Circuit:

> Where the property is in possession of the bankruptcy court, an interested party need only prove that the purchaser was in a trust relationship with regard to the property itself, the creditors of the estate or the officers of the court, to render it void.

*In re Donovan & Schuenke v. Sampsell,* supra at 811.

C.

Pierson came within each category of the *Donovan & Schuenke* rule.

He was in a trust relationship to the property primarily because of his firm's role as attorney for the debtor both prior to and during the bankruptcy case.

His trust relationship to the creditors arose from his firm's de facto representation of the debtor-in-possession. As noted earlier, the debtor-in-possession has fiduciary duties of a trustee. His client's duties are his duties.

Finally, he was an officer of the court as attorney for the debtor and for the debtor-in-possession.

D.

The trustee made several points, which we now address.

1. *The Code does not disqualify attorneys for debtors as purchasers.*

As noted in sub-part B above, disqualification as a fiduciary "does not depend upon the statute relating to bankruptcy." Disqualification based on public policy is likewise not dependent on statute, although it is reinforced by the criminal sanctions of 18 U.S.C. § 154.

2. *The sale to Pierson was consistent with "overriding policy" to maximize income from sale of assets.*

The overriding policy is to the contrary:

> Even if there were full disclosure, adequacy of consideration, absence of secret profit, an open judicial sale will not avail separately or in combination as a defense for such a fiduciary. The prohibition is absolute in the public interest.

*Donovan & Schuenke v. Sampsell,* supra, at 811. See also *In re Frazin & Oppenheim,* supra ("the question is not one of...gain or loss to the estate...").

3. *Pierson was no longer attorney of record when he purchased from the estate.*

■ Withdrawal as attorney of record does not affect disqualification. In *Donovan & Schuenke,* supra, the purchaser was the former president of the bankrupt corporation. The fact he had resigned as president prior to the sale was held to be irrelevant. See footnote 5: "If one is charged with fiduciary obligations in the bankruptcy court, he is not relieved of the burden because he resigns office."

We conclude that, for both reasons of fiduciary conflict of interest and public policy, Pierson was disqualified as a buyer.

### E.

The express order appealed permitted the trustee to assume the Karbach lease and assign it to Pierson. Assignment of leases is governed by 11 U.S.C. § 365(f) and is arguably not a sale. However, the leases were offered for sale by the trustee pursuant to authorization of 11 U.S.C. § 363(b). Furthermore, in granting the order permitting assignment of the lease to Pierson, the court implicitly denied Karbach's motion to reopen the sale, appeal of which is also before us. Finally, we perceive no practical distinction in this context between a lease assignment and a sale of an asset of the estate.

We therefore hold that Pierson was disqualified as an assignee of the estate's leasehold interest in the Karbach property. Accordingly the orders permitting assignment to Pierson and denying Karbach's motion to reopen the sale are reversed.

### IV.

There remains for consideration the effect of our rulings on the trustee's assignments of the other leaseholds and his sale of the other personal property to a disqualified buyer. Karbach is the only lessor who took an appeal and its appeal does not question the sale of other personal property.

■ Nevertheless, we cannot ignore the undisputed fact that these assignments and sales were made to an unqualified buyer and that such a sale is not merely voidable but void.

In *Donovan & Schuenke v. Sampsell,* supra, the term *void* was used advisedly. "The attack upon the order [by appeal] was not made in the time specified by statute, and therefore the affirming order might have been absolute, unless the sale was void..." p. 806. By finding the sale void, the court permitted collateral attack on it and on the order confirming the sale.

The court also was mindful of the difficulties of setting aside a sale such as that to Pierson:

But it is said that the status quo cannot be established, and the innocent will suffer. But this is always a possibility where property in custody of a bankruptcy tribunal is dealt with by unauthorized persons. The record shows that Freedman even though he may not have entered an unlawful conspiracy, knew all the essential facts. Besides, the transaction was open and notorious... The filing...in bankruptcy is a warning to all that property...in possession of the court is trust property and is dealt with by everyone at peril. p. 811.

We therefore underline our holding that the trustee's sale to Pierson was void.

### V.

Inasmuch as a new sale is required, we now discuss an independent ground for reversing the order denying Karbach's motion to reopen the sale. We hold that the sale was invalid because it was not publicly conducted.

### A.

As previously noted, the trustee prepared and filed a notice of proposed sale, which was mailed to creditors by the clerk and published in a legal newspaper. The notice included advice that hearing would be held only if objection were filed by a given date. No objection was filed and the sale was conducted at the time and place given in the notice. The trustee gave no other notice to anyone.

Bankruptcy Rule 606(b)2 provides, in part:

*Public or Private Sale.* All sales shall be by public auction, unless otherwise ordered by the court and for good cause shown.

■■ In the absence of an order of private sale, a public auction sale was mandated. The trustee did not obtain an order of private sale. Therefore the sale violated the rule unless it was by public auction.

### B.

"[I]t is apparent that some sort of advertisement is essential to make a sale 'public'." Handbook for Trustees and Receivers in Bankruptcy, 1968, Matthew Bender, at page 308. (Hereafter "Handbook"). It goes on to state:

> To be meaningful, the advertisement must...be designed to adequately reach the public. The practice with regard to advertisement of sales varies widely from district to district.

Appropriate methods include newspaper ads, notices to lists of prospective buyers, and invitations to the trade.

The trustee did not advertise the sale and the clerk's notice to creditors pursuant to section 363(b) was not such an advertisement.

■■ As stated in Handbook, supra, at page 308, "[t]he notice to creditors of all proposed sales...is not by itself sufficient to render a sale a 'public auction'."

### C.

We conclude that although the notice requirements of section 363(b) were satisfied, the public auction requirement of B.R. 606(b)(2) was not. For this reason the court abused its discretion in not granting Karbach's motion to reopen the sale.

Reversed and remanded for further proceedings not inconsistent with this opinion.