715 F.2d 1401
 9 Collier Bankr.Cas.2d 598, Bankr. L. Rep. P 69,390
In re EXENNIUM, INC., dba Axiom Television, Griffeys TV and
Appliances, Griffeys House of Portables, Griffeys
TV and Portables, Griffeys Electronics, Debtor.
Irving SULMEYER, Trustee, Appellant,
v.
KARBACH ENTERPRISES, a California limited partnership, Appellee.
 No. 82-5763.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted May 6, 1983.
Decided Sept. 16, 1983.
 
 Max Rush, Sulmeyer, Kupetz, Baumann & Rothman, Los Angeles, Cal., for appellant.
 Daniel H. Slate, Gendel, Raskoff, Shapiro & Quittner, Los Angeles, Cal., for appellee.
 Appeal from the United States Bankruptcy Appellate Panels for the Ninth Circuit.
 Before ELY, SNEED and TANG, Circuit Judges.
 SNEED, Circuit Judge:
 
 
 1
 The trustee in bankruptcy for Exennium, Inc., appeals an order of the Bankruptcy Appellate Panel (BAP), voiding the sale of four real estate leases and personal property to David Pierson, a partner in Exennium's former law firm. 23 B.R. 782 (Bankr. 9th Cir.1982). Karbach Enterprises, the lessor of one of the leases, defends the BAP's order. We reverse the decision of the BAP because Karbach failed to secure a stay of the bankruptcy sale before prosecuting its appeal as is required by 11 U.S.C. § 363(m).
 
 I.
 FACTS
 
 2
 Pierson is not a party to this appeal. His law firm filed Exennium's Chapter XI bankruptcy petition but shortly thereafter withdrew from representation. Pierson then made a private offer for Exennium's personal property and the four leases. The trustee rejected the offer and held a public sale. Notices of sale were published in a legal newspaper and mailed to most creditors but not to the lessors, whom Pierson had not listed in Exennium's schedule of creditors when he prepared its bankruptcy papers. The trustee accepted Pierson's bids on both the leases, for which Pierson offered $78,000, and the personal property.
 
 
 3
 Pierson wrote the lessors to inform them of the assignment of the leases. Karbach quickly filed an objection in bankruptcy court to the assignment. Several weeks later Karbach moved to reopen the sale of its lease on grounds of defective notice. The trustee in return asked the court for an order permitting the assignment of all four leases to Pierson. The court held two hearings on these motions. After considering an offer by Karbach for its one lease as well as an amended offer from Pierson, the court authorized the trustee to complete the sale and assign all four leases to Pierson.
 
 
 4
 Without seeking a stay, Karbach appealed to the BAP. The BAP held the sale void on two grounds. It decided that Pierson, as Exennium's former attorney, was disqualified from purchasing property of the estate. 23 B.R. at 786-87. The BAP also declared the sale illegal because it was not a "public auction" as required by Bankruptcy Rule 606(b)(2). Id. at 788-89. Although Karbach had challenged only the sale of its one lease, the BAP struck down the sale of the other three leases and Exennium's personal property because the sales were "not merely voidable but void." Id. at 788.
 
 
 5
 The trustee appeals the BAP's decision. He argues, inter alia, that 11 U.S.C. § 363(m) deprives the BAP of authority to void a sale that was not stayed. Although we agree with this contention, we must first determine whether this appeal is from a final order and thus is properly before us. Thereafter we will turn to the trustee's section 363(m) arguments.
 
 II.
 THE ORDER OF THE BAP IS APPEALABLE
 
 6
 Our obligation to determine sua sponte the finality of the order on appeal, as we do any other jurisdictional question, is clear. In re Kutner, 656 F.2d 1107, 1110 (5th Cir.1981), cert. denied, 455 U.S. 945, 102 S.Ct. 1443, 71 L.Ed.2d 658 (1982). The courts of appeals' jurisdiction over BAP decisions is limited to "final decisions." 28 U.S.C. § 1293; In re Rubin, 693 F.2d 73, 75-76 (9th Cir.1982); e.g., In re Mason, 709 F.2d 1313, 1315 (9th Cir.1983). The determination of finality generally is guided by the principles of 28 U.S.C. § 1291, even though section 1293 frees us to develop new principles to fit the special problems of bankruptcy administration, see id. at 1316-18. A final judgment has been said to be one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Catlin v. United States, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945).
 
 
 7
 Finality in this case is put in doubt because the BAP's order, while preventing only Pierson, a nonparty, from purchasing estate property, does not settle the dispute between Karbach and the trustee. Our task is lightened, however, because of the doctrine of Gillespie v. United States Steel Corp., 379 U.S. 148, 85 S.Ct. 308, 13 L.Ed.2d 199 (1964). There the Supreme Court faced an order in the "twilight zone" of "marginal" rulings whose finality could not be conclusively resolved. Id. at 152, 85 S.Ct. at 311. Practical considerations, however, required a decision on the merits. The "danger of denying justice by delay" outweighed "the inconvenience and costs of piecemeal review," particularly because the questions on appeal were "fundamental to the further outcome of the case." Id. at 152-54, 85 S.Ct. at 310-12. The Court heard the case. The Gillespie doctrine, therefore, permits the courts of appeals to decide the merits in cases of marginal finality where the course of litigation would be impeded, rather than advanced, by dismissing the appeal. See Smith v. Eggar, 655 F.2d 181, 184-85 (9th Cir.1981); Wescott v. Impresas Armadoras, S.A. Panama, 564 F.2d 875, 880-81 (9th Cir.1977); 9 J. Moore, B. Ward, & J. Lucas, Moore's Federal Practice p 110.12 (1983).
 
 
 8
 While we are not inclined to treat the requirement of finality lightly, we do recognize that, in general, bankruptcy proceedings differ significantly from others and that, in this case specifically, a ruling on the propriety of the sales to Pierson will advance, and not impede, the bankruptcy proceedings. Pierson's qualifications to purchase Exennium's property raise an issue "fundamental to the further outcome of this case." Until settled this issue will cast its shadow over further administration of the estate. It is now more than two years after the initial sale, the validity of that sale has been fully litigated in two courts, yet if we dismiss the appeal it could be years before the property can be finally distributed. The uncertainty over title has already created another round of litigation over responsibility for past-due rents. The uncertainty can impose other costs as well. Purchasers are likely to demand a steep discount in return for investing in the property. And disqualifying Pierson may deprive the estate of its highest bidder. Similar problems surround the other three leases and the personal property. At the same time, resolution at this stage--particularly now that the appeal has been argued--will consume few additional judicial resources.
 
 
 9
 We thus conclude that the approach endorsed in Gillespie requires us to hear this appeal. Our holding comports with that of the In re Mason court, which held that section 1293 permits the courts of appeals to hear questions "conclusive [of] the ultimate outcome of the case" even if section 1291 might not require a hearing. 709 F.2d at 1317.[1]
 
 III.
 KARBACH'S DISABILITY TO CHALLENGE THE SALE
 
 10
 The trustee argues that neither we nor the BAP can overturn the sale of leases to Pierson. We agree.[2] Both we and the BAP are barred by 11 U.S.C. § 363(m), which provides in part that "[t]he reversal or modification on appeal of an authorization ... of a sale or lease of property does not affect the validity of a sale or lease ... to an entity that purchased or leased such property in good faith, ... unless such authorization and such sale or lease were stayed pending appeal." (emphasis added).
 
 
 11
 In In re Combined Metals Reduction Co., 557 F.2d 179, 187-90 (9th Cir.1977), we held that a failure to seek such a stay bars an appeal from the sale. If appeal is sought without a stay, the courts cannot grant relief because they cannot overturn the sale. This was the holding of In re Royal Properties, Inc., 621 F.2d 984, 986-87 (9th Cir.1980). While it is true that the courts in In re Combined Metals Reduction Co. and In re Royal Properties, Inc. interpreted Bankruptcy Rule 805, not section 363(m),[3] the two provisions perform the same function. Karbach has not suggested that section 363(m), the currently applicable Code provision, differs from Rule 805 in any respect material to this case.
 
 
 12
 The BAP held section 363(m) inapplicable because Karbach was not appealing an "order authorizing the trustee to sell property." 23 B.R. at 785. It described the order on appeal as one "confirming" and "declining to reopen" the sale. Id. This puts too fine a point on it. The BAP has confused the order on appeal with Karbach's motion before the bankruptcy court. The order Karbach appealed to the BAP was an order "permitting the assumption and assignment of leases." That order provided authorization for the trustee's sale. Karbach's motion to reopen was only before the bankruptcy court. The BAP erred in holding section 363(m) inapplicable.
 
 
 13
 Karbach has not presented other reasons for affirming the BAP. It could not claim inherent power to overturn the sale. Its decision rested on the reasons of equity and public policy cited in Donovan & Schuenke v. Sampsell, 226 F.2d 804 (9th Cir.), cert. denied sub nom. Freedman v. Donovan & Schuenke, 350 U.S. 895, 76 S.Ct. 152, 100 L.Ed. 787 (1955). In re Cada Investments, Inc., 664 F.2d 1158 (9th Cir.1981), illustrates that the equitable power to overturn a confirmed judicial sale is conditioned on the appellant's compliance with the stay requirement. In that case we heard an appeal to set aside on equitable grounds a confirmed judicial sale that had not been stayed only because the sale had been expressly conditioned on the outcome of the appeal. Without this condition, the appeal would have been moot. See id. at 1160.
 
 
 14
 We are quite reluctant to invoke public policy to override the Code's express requirement that reversal of an authorization of sale not affect the sale's validity unless the authorization and sale were stayed.[4] Other possible justifications for bypassing the stay requirement are equally unpersuasive. Section 363(m) does not require the purchaser to take irreversible steps consummating the sale, thus making its overturning a hardship to the buyer, before the absence of a stay will be operative. See In re Roberts Farms, Inc., 652 F.2d 793, 798 (9th Cir.1981) (suggesting failure to seek stay and changed circumstances as independent ground for dismissal, not exclusive ground). Nor is there support for the argument that Pierson's disqualification, if established, would demonstrate a lack of good faith.[5] Lack of good faith is generally determined by fraudulent conduct during the sale proceedings. See In re Rock Industries Machinery Corp., 572 F.2d 1195, 1198 (7th Cir.1978). In sum, Karbach was required to obtain a stay. He did not do so. We therefore reverse the opinion of the BAP.
 
 IV.
 CONCLUSION
 
 15
 Resting our holding on Karbach's failure to obtain a stay makes it unnecessary to consider whether the case before the BAP was moot because Pierson was not a party. We also express no opinion on the BAP's view that Bankruptcy Rule 606(b)(2) has been superseded by 11 U.S.C. § 363(b). Any court considering the propriety of subsequent sales, however, no doubt will consider this issue. See 2 Collier on Bankruptcy p 363.03 n. 7 (L. King 15th ed. 1983).
 
 
 16
 The decision of the BAP is REVERSED.
 
 
 
 [1]
 Because we have jurisdiction under the Gillespie doctrine, we need not decide whether other exceptions to the finality requirement are applicable. We also do not decide how often the costs of litigation in two courts below, whether the second court be a district court or a BAP, will justify invocation of the Gillespie doctrine. Compare In re Marin Motor Oil, Inc., 689 F.2d 445, 447-49 (3d Cir.1982), cert. denied, --- U.S. ----, 103 S.Ct. 1196, 75 L.Ed.2d 440 (1983) (decision of district court on final appealable order of bankruptcy court always appealable). We note, however, that the courts designated as intermediate appellate courts in bankruptcy proceedings have a jurisdiction over interlocutory decisions denied the courts of appeals. 28 U.S.C. §§ 1334(b), 1482(b); see In re Rubin, 693 F.2d at 75-76. Thus there is nothing in the structure of the Bankruptcy Reform Act that requires all decisions appealable to the district courts or BAPs to be automatically appealable to the courts of appeals
 To the extent that the Supreme Court in Coopers & Lybrand v. Livesay, 437 U.S. 463, 477 n. 30, 98 S.Ct. 2454, 2462 n. 30, 57 L.Ed.2d 351 (1978), suggested a narrow application of the Gillespie exception to section 1291, we would still be free to apply the policies behind Gillespie more broadly under section 1293 if necessary for the efficient operation of bankruptcy proceedings.
 
 
 [2]
 Karbach seeks to prevent us from reaching this issue by arguing that events occurring since the appeal was filed preclude our granting effective relief. We are not persuaded. None of the proceedings that have taken place before the bankruptcy court after this appeal was filed can determine the right to the leases. The bankruptcy court lost its jurisdiction over their fate once the question of Pierson's right to purchase was appealed. See In re Bialac, 694 F.2d 625, 627 (9th Cir.1982); In re Combined Metals Reduction Co., 557 F.2d 179, 200-01 (9th Cir.1977). And Karbach has pointed to no evidence of Pierson's loss of interest in the leases that could rebut the contrary representations by Pierson's attorney
 
 
 [3]
 The portion of Rule 805 that establishes the stay requirement was not in effect when In re Combined Metals Reduction Co. was decided, but the court found the rationale of the rule "most persuasive" and used it for support. See 557 F.2d at 188 & n. 5
 
 
 [4]
 The BAP incorrectly implied that 18 U.S.C. § 154 was part of the Donovan & Schuenke court's public policy concerns. The Donovan & Schuenke court refused to consider section 154, a criminal statute, in the civil case. See 226 F.2d at 807-08
 We also do not accept the BAP's reading of Donovan & Schuenke as holding that sales to fiduciaries can be overturned at any time because they are void. Donovan & Schuenke did hold that a confirmed judicial sale that might otherwise be "absolute" could be overturned if "void." Id. at 806. The purchaser in Donovan & Schuenke, however, did not face a stay requirement because none had yet been established. As In re Cada Investments, Inc. indicates, the statutory requirement of a stay limits the court's power to overturn confirmed judicial sales.
 
 
 [5]
 This opinion should not be construed as condoning Pierson's action of purchasing his former client's property in a bankruptcy sale. We do not reach that issue