**In the Matter of Samuel T. H. SHEN**

**and**

**Carolyn Jean Shen, Debtors.**

Nos. Bankruptcy 74–607–K, Bankruptcy 74–608–K.

United States District Court, S. D. California.

Sept. 16, 1980.

Michael B. Kaye, San Diego, Cal., for debtors.

Charles A. Bird, San Diego, Cal., for Luce, Forward, Hamilton & Scripps and Theodore W. Graham.

## OPINION

ORRICK, District Judge.

Incredibly, after six years of proceedings in the bankruptcy court involving seventeen different appeals and eight different lawyers for the bankrupts, Mr. and Mrs. Samuel T. H. Shen, ex–debtors, and Mr. Michael Kaye, their lawyer, have moved, pursuant to Bankruptcy Rule 515, to reopen the bankruptcy proceedings in order to charge the Trustee in Bankruptcy, Mr. Theodore Graham, and his counsel, the law firm of Luce, Forward, Hamilton and Scripps, with certain acts of misconduct. The bankruptcy proceedings were dismissed voluntarily on December 20, 1979, several months after the Shens and Mr. Kaye had executed in the presence of the court a release of the very claims and demands against the Trustee and his counsel which are herein asserted as grounds for the motion to reopen. When stripped of the ill–supported arguments urged on this Court by Mr. Kaye, the feeble excuse which underlies his outrageous attempt to set aside the release is that he exercised "poor judgment" in signing the release and disavowing participation in any further proceedings to challenge the release. We might add that he has exercised even worse judgment in attempting to

repudiate his signature and in unashamedly abusing the processes of the courts. Mr. Kaye's initiation and pursuit of the present motion raises a substantial question as to his legal ethics [1] as well as his right to continue to practice before this Court.[2] This Court finds that the motion is an unreasonable and vexatious multiplication of the Shen's bankruptcy proceedings, is an abuse of the Court's processes, and is frivolous, bordering on an attempt to have the Court become a party to fraud. The Court further finds that the Shens and Mr. Kaye have willfully and in bad faith committed this abuse. For these reasons, and those set forth below, the motion to reopen is denied, and attorneys' fees and costs incurred by Mr. Graham and the firm of Luce, Forward, Hamilton and Scripps in connection with the instant motion are assessed jointly and severally against the Shens and Mr. Kaye in the amount of $36,339.29.

## I

Only the details of the labyrinthine bankruptcy proceedings most pertinent to the motion presently under consideration are here discussed. In March, 1974, the Shens first sought relief under the federal bankruptcy laws by filing a petition for relief under Chapter XII of the Bankruptcy Act. Theodore Graham was appointed operating trustee shortly after the filing of the initial Chapter XII petition. The firm of Luce, Forward, Hamilton and Scripps, in which Mr. Graham is a partner, was appointed counsel to Mr. Graham throughout his tenure as Trustee. On November 7, 1975, the Shens were adjudicated bankrupts. On June 4, 1976, Mr. and Mrs. Shen filed a petition for arrangement under Chapter XI of the Bankruptcy Act and were again adjudicated bankrupts shortly thereafter. Mr. Graham proffered his resignation as Trustee of the Shen estate to the bankruptcy court on October 31, 1978, and the court accepted his resignation on November 9, 1978. On March 26, 1979, Martin Goldberg, the special auditor appointed by the bankruptcy court, filed his report approving the Trustee's handling of the Shen estate. An order formally discharging Mr. Graham as Trustee was entered on May 18, 1979. In his Memorandum of Opinion Re: Fee Applications, dated July 18, 1978, Judge Katz noted the following:

"Suffice it to say that at the commencement of these proceeding the debtors were insolvent in every sense of the word. Today, some four years later, all unsecured creditors have been paid in full with interest, the so called 'equity claimant' class of creditors has been satisfied, the secured creditor problems are basically resolved, and the debtors have an estate, net to them, approximating over $1 million.

It cannot be gainsaid that the inflationary real estate market in Southern California was at least in part responsible for this success. However, it is also due in large measure to the efforts of Mr. Graham who undertook to resolve many of the problems facing the debtors and, in my opinion did so with a view in mind of serving the interests of his constituency, namely the creditors, while at the same time protecting the debtors. He did this in the face of numerous changes of coun-

---

1. Rule of Professional Conduct of the State Bar of California 2–110 states:

"A member of the State Bar shall not seek or accept employment to accomplish any of the following objectives, nor shall the member do so if the members know or should know that the person solicited for or offering the employment wishes to accomplish any of the following objectives:

(A) Bring a legal action, conduct a defense, or assert a position in litigation, or otherwise take steps, solely for the purpose of harassing or maliciously injuring any person or to prosecute or defend a case solely out of spite.

(B) Present a claim or defense in litigation that is not warranted under existing law, unless it can be supported by good faith argument for an extension, modification or reversal of existing law.

(C) Take or prosecute an appeal solely for delay, or for any other reason not in good faith."

2. This Court recommends pursuant to Local Rule 110–6 that the Standing Committee on Discipline review Mr. Kaye's qualifications to remain a member of the Bar of this Court.

sel for the debtors as well as the oft evident contrariness of Mr. Shen."

The Shens again filed a Chapter XII petition on November 21, 1979, and voluntarily dismissed the bankruptcy proceedings on December 20, 1979.

After Mr. Graham's resignation as Trustee, he and his law firm sought collection of fees and determination of any claims the Shens might have against them arising from the fulfillment of their respective duties to the Shen estate during the period of the Graham trusteeship. These issues were resolved through a settlement, the terms of which were embodied in a stipulated order signed by Judge Katz and approved by the Shens and their attorney Michael Kaye on April 20, 1979. The signatures of Samuel T. H. Shen, Carolyn Jean Shen, and Michael Kaye all appear on an attachment to Judge Katz' order indicating that the stipulated order was approved *both as to form and content*, and that all rights of appeal and reconsideration of the order were waived. The findings of fact incorporated in Judge Katz' order included the following:

"2. The Trustee's final report and account is accurate and proper.

3. The Trustee has satisfactorily performed all of the duties required of him under the National Bankruptcy Act, the Rules promulgated by the United States Supreme Court, and all orders and judgments of this Court.

4. SAMUEL T. H. SHEN and CAROLYN JEAN SHEN released the Trustee and his counsel of their own free will without undue influence being exerted upon them.

5. The release attached hereto is fair to SAMUEL T. H. SHEN and CAROLYN JEAN SHEN, debtors and debtors–in–possession herein.

6. SAMUEL T. H. SHEN and CAROLYN JEAN SHEN have received the advice of competent counsel regarding the release.

\* \* \* \* \* \*

9. The withdrawals, dismissals and release by the debtors and debtors–in–pos-session are reasonable and appropriate. The offer by the Trustee and his counsel is reasonable and appropriate. Such withdrawals, dismissals, release and offer will substantially reduce the litigation and administrative expenses in these proceedings and will resolve all disputes and claims, known or unknown, arising directly or indirectly out of these proceedings and will resolve all disputes and claims known or unknown, arising directly or indirectly out of these proceedings between the debtors and the Trustee or his counsel, all as more specifically set forth in the release attached hereto."

Judge Katz' conclusions of law included the following:

"1. The release attached hereto is legally binding and enforceable according to its terms.

2. The fees and costs awarded by the provisions hereinbelow are reasonable in all respects.

3. The Trustee's Report and Account is accurate and proper and no liability of the Trustee nor his counsel has been established with respect to matters referred to in said Report and Account and no evidence has been offered to establish the same."

Following his findings of facts and conclusions of law, Judge Katz ordered, among other things:

"That LUCE, FORWARD, HAMILTON & SCRIPPS and each of its partners and associates THEODORE W. GRAHAM, individually and as Trustee of the above-named debtors in any and all proceedings under the National Bankruptcy Act, including the Chapter XII proceedings, the straight bankruptcy proceedings, and the converted Chapter XII proceedings, and the agents, employees, successors and assigns of each of them are released and forever discharged from any and all liability, claims, demands, actions, and causes of action, known or unknown, of every kind, description and nature, now existing or hereafter arising which SAMUEL T. H. SHEN, CAROLYN JEAN SHEN, as bankrupts, debtors–in–possession or

the successors or assigns of either of them have at any time held, presently hold, or with the passage of time will hold, all as more particularly set forth in the release attached hereto and incorporated herein by this reference; if there be any conflict between the terms hereof and said release, the terms of the release shall control."

The settlement further encompassed a release which was referred to in Judge Katz' order and signed by both Mr. and Mrs. Shen. The release is, in Mr. Kaye's terms, a "comprehensive exculpatory instrument." It provides that both Mr. Graham and the Luce, Forward firm "are hereby released and forever discharged from any and all liability, claims, demands, actions, and causes of actions, known or unknown, of every kind, description and nature, now existing, or hereafter arising which claims have been held, are presently held, or with the passage of time will be held by the Releasing Parties or any of them."

The release also provided that the parties had executed the release of their own free will, were not acting under undue influence, and that they had consulted with counsel and received advice regarding the execution of the release. The final paragraph of the release was the following attorneys' fees provision:

"7. In the event either of the Releasing Parties later attempts to set aside this release, claim that this release is unenforceable, in whole or in part, or seeks to impose liability upon any of the Released Parties with respect to the matters released under this release, all Releasing Parties jointly and severally agree to pay any and all attorneys' fees incurred by one or more of the Released Parties in their attempts to establish the effectiveness or application of this release."

At the time the release was executed, Mr. Kaye stated in open court that he would never appear to challenge the release which

he had approved by signing it.[3] Nonetheless, Mr. Kaye filed the present motion and appeared at the hearing to represent the Shens, at which time he indicated that he wished to repudiate the signature he had made earlier in open court. His motivation for so doing was set forth in his affidavit, which makes clear that he now has concluded that execution of the release by him and his approval of it represented poor judgment on his part.

All agree that the Shen's estate is now fully solvent. The Shens do not seek to have the bankruptcy court resume general administration over the Shen's property. Rather, they seek a variety of sanctions against Mr. Graham and his law firm on a number of grounds, which include refusal to surrender books and records of the estate, concealment of records, illegal seizure of mail, failure to disclose conflicts of interest, filing of false accounts, breach of fiduciary duty, and fraud on the bankruptcy court, each and every one of which was the subject of the aforesaid release of claims and demands.

■ As the Court has made clear, the release is a valid, duly executed document approved by the Court and the parties at a special hearing, and it operates as a bar against further pursuit of the claims and demands specified therein, even through a proceeding under Bankruptcy Rule 515. But were the Court to look beyond the release and consider the merits of the outrageous charges brought against Mr. Graham and his firm in the light most favorable to the debtors, it still would dismiss the charges as being frivolous, bordering on attempted fraud upon the Court.

II

■ A motion to reopen bankruptcy proceedings under Bankruptcy Rule 515 is addressed to the sound discretion of the trial judge, and the granting or denial of such a motion will be reversed only for

---

**3.** On April 18, 1979, before the Honorable Herbert Katz, Mr. Kaye stated: "Mr. Shen's decision is made and I believe it will stand and I am

not going to come back to unmake it." Transcript of the afternoon session, April 18 1979, p. 10.

abuse of that discretion. *In Re Haker*, 411 F.2d 568 (5th Cir. 1969); *Kheel v. Bethlehem Steel Co.*, 355 F.2d 187 (9th Cir. 1965). Such a motion will be granted only for cause shown, *Hull v. Powell*, 309 F.2d 3 (9th Cir. 1962), and the determination of what constitutes sufficient good cause is within the trial court's discretion. *Bartle v. Markson*, 357 F.2d 517 (2d Cir. 1966). The burden of proof in establishing good cause is on the party seeking to reopen the bankruptcy proceeding. *In Re Fair Creamery Co.*, 193 F.2d 5 (6th Cir. 1951).

Of the many obstacles to be overcome by the Shens in order to meet their burden of proof to show good cause to reopen none is more formidable than the general release signed by the Shens and approved by their legal counsel, Michael Kaye. As is obvious from a reading of those provisions set forth in Section I, *supra*, the release is a broad instrument, the purpose of which is to put to rest precisely the types of claims the Shens are asserting as grounds for their Rule 515 motion. The release by its terms embraces "all liability, claims, demands, actions, and causes of actions, known *or unknown*, of every kind, description and nature, now existing, or hereafter arising * * *."

The Shens urge this Court to find the release invalid and unenforceable. The arguments they offer in support of such a finding are less than clear, but apparently are grounded in what they term as Mr. Graham's "double fiduciary status" at the time the release was executed. This status, Mr. and Mrs. Shen contend, results from Mr. Graham's position as ex–trustee of the Shen estate and his alleged usurpation of Mr. Kaye's role in advising the Shens on the merits of the settlement and release.

■ It is beyond question that bankruptcy trustees occupy a fiduciary position in relation to administration of bankruptcy estate assets. *In Re Combined Metals Reduction Co.*, 557 F.2d 179 (9th Cir. 1977). It is unclear, however, what fiduciary duty lingers after the trustee's resignation has been accepted by the bankruptcy court and the trustee is attempting to resolve questions of liability with ex–debtors. The Shens have offered no authority in support of their assertion that an ex–trustee operates in a fiduciary capacity in negotiating a settlement and release of liability with debtors. Resolution of this precise issue is not required by the facts of the present case though, since this Court finds that Mr. Graham's disclosures were more than adequate, whether or not he was operating as a fiduciary in negotiating the settlement and release here at issue.

"In the case of releases, as in other instances of dealing between the fiduciary and the person for whom he is acting, there must be proof of full disclosure by the trustee of the facts of the situation and the legal rights of the beneficiary * * *." Bogert, *The Law of Trusts and Trustees* § 943. This Court finds that there was full disclosure on the part of Mr. Graham, and that the Shens were fully aware of the facts giving rise to their claims as well as their legal rights, which they have vigorously pursued throughout the course of their bankruptcy proceedings. For example, the facts of the mail interception claims raised by the Shens were known to them well in advance of the settlement and release. On February 13, 1979, Mr. Shen stated these claims in a letter to Mr. Graham. The same claims were raised again at hearings on February 20, 1979, and March 12, 1979. Indeed, the legal theory of the mail interception claim, based in part on *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), which is raised here as a ground for rescinding the release and reopening the case, was concisely laid out in January, 1979, at page four of the "Debtors' Opposition to Proposed Order Modifying the Order Authorizing Trustee to Employ Real Property Manager" filed by Mr. Kaye on behalf of Mr. and Mrs. Shen.

Similarly, the estate records claim was raised by Mr. Shen in a letter to Mr. Graham dated February 7, 1979. Mr. Kaye seconded those claims by letter of February 8, 1979, to Mr. Graham. The detailed responses of the Luce, Forward firm, stating

their position on the question of turnover of records, also served to inform the Shens of the facts surrounding the records issue. The legal theory of their records claim was set forth in full in April, 1979, in the debtors' opposition to the Trustee's fee application for the period from April 25, 1978, to April 1, 1979.

Mr. Shen's testimony on July 5, 1978, during an examination pursuant to Rule 205, demonstrates that in relation to the remaining claims asserted as a basis for the motion here under consideration—the Trustee's handling of the Fifth and Fir and Cherokee Avenue properties and the B & H Music litigation—there was sufficient disclosure on Mr. Graham's part and sufficient knowledge on Mr. Shen's part to support the validity of the release of those claims. The bulk of the substance of these claims is also outlined in the Trustee's motion to determine his responsibilities and liabilities filed on August 7, 1978. Furthermore, the problems associated with the Fifth and Fir property were fully set out, including the conflict of interest problem, during the June 21, 1978, hearing on the debtors' motion to remove the real property manager. The request for additional findings proposed by Mr. Kaye, dated July 27, 1978, shows detailed knowledge of the conflict of interest issue. This Court's conclusion as to the adequacy of disclosure is provided further equitable support by the facts that Mr. Graham's firm held the estate records open for the Shens' inspection,[4] that the Shens refused to avail themselves of this opportunity, and that the Trustee actively and promptly sought to ferret out and to resolve these liability issues.[5]

The second facet of Mr. Graham's "double fiduciary status" allegedly stems from his usurpation of the role of the Shen's lawyer, Mr. Kaye, by means of a telephone conversation with Mr. Shen on the evening prior to the April 18, 1979, hearing at which the Shens executed the settlement and release.

This Court finds that whatever influence Mr. Graham may have exercised on Mr. Shen's judgment on the evening of April 17 was more than compensated for by the advice of Mr. Kaye on the morning of April 18. The memorandum of release signed by the Shens contains in paragraphs four and five an explicit acknowledgment that the release was entered into without undue influence and upon advice of their lawyer. These acknowledgments were corroborated by Judge Katz' findings of fact Nos. 4 and 6. Moreover, Mr. Kaye himself by his signature approved these documents as to form and content.

This Court concludes that the grounds offered by the Shens for invalidating the release are entirely insufficient. Thus, they have failed to overcome the primary barrier to meeting their burden of persuasion on the showing of good cause required to open the bankruptcy proceedings. In addition to the reasons already provided, refusal to re-open the bankruptcy proceedings is further compelled by a number of additional factors. First, the Shens waived their rights to have the release reconsidered, but nonetheless pursued them with this motion. Furthermore, attorney Kaye stated to the bankruptcy court that he would not appear to challenge the release which he signed, but nonetheless has so appeared. Second, Judge Katz independently found the terms of the release and settlement fair, and both Judge Katz and auditor Goldberg approved the Trustee's handling of the Shen estate. Finally, federal courts have emphasized that "it is important to litigants and the public alike that there be effective and expeditious disposition of disputes which reach the courts, and this consideration is remarkably important in matters of bankruptcy." *California Airmotive Corp. v. Bass*, 354 F.2d 453, 455 (9th Cir. 1965). The effective and expeditious disposition of disputes such as the ones here at issue will be greatly furthered if courts honor settle-

4. *See, e. g.*, letters dated March 8, 1979, and March 14, 1979, from the Luce, Forward firm to Mr. Kaye.

5. The Trustee filed his motion to determine the responsibility and liability issues on August 7, 1978, just weeks after the issues were raised during the Rule 205 examination.

ments such as the one challenged by this motion. The motion to reopen the bankruptcy proceedings involving the Shens is accordingly DENIED.

### III

Paragraph 7 of the release here at issue provides that the releasing parties shall pay any and all attorneys' fees incurred by the released parties resulting from any attempt to set the release aside. Thus, as a matter of contractual right, this Court awards attorneys' fees in favor of Mr. Graham and the firm of Luce, Forward, Hamilton and Scripps to be paid by Mr. and Mrs. Shen.

 In addition, this Court finds Mr. Kaye jointly liable for those same attorneys' fees under the inherent power of this Court, recently reaffirmed by the United States Supreme Court in *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980). Although the "American rule" is that generally a prevailing party is not entitled to recovery of attorney's fees, *Arcambel v. Wiseman*, 1 U.S. (3 Dall.) 306, 1 L.Ed. 613 (1796), federal courts retain the inherent power to tax counsel fees against a party who has willfully and in bad faith abused judicial processes. *Roadway, supra*, 447 U.S. at 766, 100 S.Ct. at 2464. The instant motion to reopen is an example of such willful and bad faith abuse.

On July 5, 1978, during the course of an examination of Mr. Shen pursuant to Rule 205, Mr. Kaye made the following statement:

"MR. KAYE: LET ME EXPRESS ON THE RECORD OUR HUGE AND UNLIMITED ADMIRATION FOR THE IRONCLAD LANGUAGE DESIGNED BY MR. BROWN IN THIS PROPOSED APPLICATION FOR STIPULATED ORDER. IT COVERS MUCH MORE— WELL, FOR THE PURPOSE THAT MR. BROWN IS OFFERING IT, IT SIMPLY PROTECTS THE TRUSTEE. IT COVERS MUCH MORE THAN WE THINK IS NEEDED ON BEHALF OF THE TRUSTEE OR OTHER PARTIES THAT THE TRUSTEE HAS SOUGHT TO PROTECT BY THE ORDER. ONE OF THE MOST OBJECTIONABLE FEATURES OF THE PROPOSED STIPULATED ORDER APPEARS IN PARAGRAPH 3 OF THE STIPULATION ON PAGE 4 BEGINNING LINES 10 THROUGH LINE 17. WE HAVE HERE A GENERAL RELEASE AND ALSO A WAIVER OF THE PROVISIONS OF CALIFORNIA CIVIL CODE SECTION 1542. NOW, THAT PROVISION OF THE CALIFORNIA CIVIL CODE WOULD PROVIDE THAT ANY GENERAL RELIEF THAT WE MAKE WOULDN'T EXTEND TO CLAIMS WHICH WE MIGHT HAVE THAT WE'RE UNAWARE OF AT THE PRESENT TIME AND WHICH IF WE HAD BEEN AWARE OF, IT WOULD HAVE MATERIALLY AFFECTED OUR SETTLEMENT.

\* \* \* \* \* \*

\* \* \* AND IF WE SHOULD LATER DISCOVER A MAJOR DISCREPANCY, WE WOULD BE BARRED BY THIS WAIVER, BY THIS VERY BROAD, GENERAL RELEASE FROM EVER OBTAINING A RECOVERY ON SOMETHING—IN EFFECT WE ARE BEING ASKED TO SIGN AWAY IN THE BLIND ANY CLAIMS WHICH WE MAY HAVE.

\* \* \* \* \* \*

MR. KAYE: WELL, THIS EXHIBIT 1 IS—COVERS EVERY CONCEIVABLE POSSIBILITY UNDER THE SUN, AND RUNS FAR BEYOND ANY PROTECTION THAT MAY BE REQUIRED BY THE TRUSTEE." R.T. 5–7.

Thus, Mr. Kaye demonstrated his awareness that the release challenged through the motion here under consideration had the legal effect of barring "every conceivable possibility under the sun." Nonetheless, he proceeded to challenge the release on the basis of a number of issues which had already been contested by both sides prior to the execution of the release.

This awareness on Mr. Kaye's part of the legal effect of the release, coupled with

several other factors, leads this Court inexorably to the conclusion that the present motion to reopen was made vexatiously, unreasonably, in bad faith and was willfully abusive. First, the Shens offered almost nothing in the way of factual support of their challenge to the release which had not been brought to light prior to the settlement and release. Second, their legal arguments on the invalidity of the release were manifestly transparent in their lack of merit. Their usurpation of counsel theory was particularly vacuous. Third, as Mr. Kaye's affidavit and statements at the hearing make evident, his motivation in bringing this action was to rectify what he saw as errors of judgment, on both his and the Shens' part, in negotiating the release. It is not a legitimate ground for challenging a release and settlement that a better deal could have been, or should have been negotiated by a party or his attorney. Fourth, there was a marked chasm between the charges of crime and corruption leveled by Mr. Kaye, who injected them with a great deal of vituperative rhetoric, and the facts offered in support of those charges. Finally, this Court finds it disturbing whenever an officer of this Court seeks to repudiate a signature to a document made in open court.

In addition, pursuant to 28 U.S.C. § 1927, this Court assesses the costs of this motion against attorney Kaye. That statute provides:

"Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case as to increase costs unreasonably and vexatiously may be required by the court to satisfy personally such excess costs."

In these days of crowded dockets and increasing caseloads, the time of federal courts is an ever more precious resource, which this Court will not tolerate having squandered in pursuit of manifestly unmeritorious motions. Such motions contribute to the glacial pace of modern litigation, which as the Supreme Court has recently emphasized, breeds frustration with the federal courts, and ultimately disrespect for the law.

In assessing the amount of attorneys' fees to be awarded as reasonable compensation for the work performed in responding to the Shens' motion to reopen, this Court has been guided by the criteria outlined in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975), *cert. denied*, 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976). In particular, the computation was based on the time and labor required to organize, review, and present the massive amount of material involved in the Shens' charges, 324 hours by the Luce, Forward firm and an additional 39.5 hours by the Seltzer, Caplan firm, and a reasonable hourly billing rate, averaging approximately $85 an hour for the Luce, Forward firm, $150 an hour for Mr. McMahon's 26.5 hours as the attorney of record, and $35–$40 an hour for 13 hours of law clerk research. Also specifically considered were the time limits imposed for organizing, reviewing, and presenting voluminous materials dealing with the Shens' estate, the high quality of the work performed by respondents' counsel, their success in defeating the motion to reopen, the experience, reputation, and ability of respondents' counsel, and the acrimonious nature of the task of dealing with the Shens and Mr. Kaye.

Accordingly, IT IS HEREBY ORDERED that the motion to reopen bankruptcy proceedings is DENIED, and that attorneys' fees in the amount of $31,883 and costs in the amount of $4,456.29 are assessed jointly and severally against Mr. and Mrs. Shen and Mr. Michael Kaye to be paid within thirty (30) days.