## In re GRODEL MANUFACTURING, INC., Debtor.

### Bankruptcy No. 5–80–00035.

United States Bankruptcy Court, D. Connecticut.

Oct. 7, 1983.

---

3. *See* Official Code of Ga.Ann. § 43–3–6 to –12 (Michie Supp.1983).

**694**

Martin S. Gold, trustee.

Jonathan S. Bowman, Cohen & Wolf, P.C., Bridgeport, Conn., for trustee.

Harris D. Leinwand, New York City, for official unsecured creditors.

Thomas A. Gugliotti, Schatz & Schatz, Ribicoff & Kotkin, P.C., Hartford, Conn., for Citytrust.

John C. Yavis, Jr., Murtha, Cullina, Richter & Pinney, Hartford, Conn., for James Ledbetter.

## MEMORANDUM ON FORMER TRUSTEE'S ELIGIBILITY TO PURCHASE DEBTOR'S STOCK

ALAN H.W. SHIFF, Bankruptcy Judge.

### I.

### BACKGROUND

The court appointed trustee of Grodel Manufacturing, Inc. (Grodel), a Chapter 11 debtor, seeks a determination as to whether his predecessor, James Ledbetter (Ledbetter), may purchase stock in the reorganized company under a proposed plan of reorganization. During a duly noticed hearing for that purpose, all parties in interest were represented and requested such a ruling as a means of avoiding a time consuming and expensive confirmation process in the event that the proposed sale of stock to Ledbetter would prevent confirmation. After considering the arguments of counsel and re-

viewing the applicable principles of law and equity, I conclude that Code section 105(a)[1] buttressed by the broad equitable powers of this court is a sufficient basis for this court to determine Ledbetter's eligibility to purchase stock in a reorganized company.

### II.

### DISCUSSION

Ledbetter served as the debtor's trustee from May 28, 1980 to October 26, 1982. Since then Ledbetter has served as the debtor's chief operating officer. On May 27, 1983, Citytrust, a secured creditor, filed a Disclosure Statement and a Plan of Reorganization. Article III of the disclosure statement provides in pertinent part:

> ... Citytrust has negotiated with James Ledbetter of Southbury, Connecticut and Sanford Landa of Highland Park, New Jersey (Buyers) for the purchase of the Debtor through the acquisition of the stock in the Debtor ... Mr. Ledbetter will have a one-third stock interest in the company and Mr. Landa a two-third interest.

Article IV of the disclosure statement provides that, "[t]he reconstituted Debtor will manage and control its property and assets after confirmation of the Plan."

Deep rooted principles of equity and public policy require a sharp focus upon the activities of fiduciaries. Fiduciaries must not only dedicate their skill and judgment to their tasks but also a high level of loyalty and discretion, so that their conduct is not directly or indirectly in conflict with their principals' interest.

 In the bankruptcy context, this focus is even more penetrating. It is well settled that trustees in bankruptcy occupy a fiduciary relationship with regard to the administration of estate assets. *Matter of Shen,* 7 B.R. 942, 947 (S.D.Cal.1980). This relationship is all pervasive. All of a trustee's obligations are fiduciary obligations. Accordingly, trustees are held to the high-

---

1. 11 U.S.C. § 105(a)

 The bankruptcy court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.

est standards of conduct and, as noted in *Matter of Combined Metals Reduction Co.*, 557 F.2d 179, 196 (9th Cir.1977), quoting Chief Judge Cardozo of the New York Court of Appeals:

> Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate. Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the 'disintegrating erosion' of particular exceptions. [Citations omitted.] Only thus has the level of conduct for fiduciaries been kept at a level higher than that trodden by the crowd. It will not consciously be lowered by any judgment of this court. *Meinhard v. Salmon*, 249 N.Y. 458, 164 N.E. 545, 546 (1928).

Moreover, a trustee, in addition to his duties as a fiduciary, is an officer of the court. Thus a trustee is prohibited by both principles of equity and public policy from using his position of trust for personal profit and purchases of property of the estate by a trustee for that purpose are void.

As the court in *In re Frazin & Oppenheim*, 181 F. 307 at 309, 310 (2d Cir.1910) observed:

> ... there are other considerations underlying these equitable principles where the question is presented whether an officer of a court who has duties to perform with respect to property in the custody of the court can buy it for his own benefit. These are considerations of public policy. And no consideration of public policy is deeper grounded upon fundamental principles—upon principles which reach the very foundations of judicial authority—than that courts and court officers must

be disinterested in the management of estates committed to their charge. It cannot be permitted that officers appointed by courts to perform duties regarding property in custody of the law should speculate therein. It cannot be permitted that court officials should use their official positions for personal profit. The question is not one of fraud or good faith, of gain or loss to the estate, in a particular instance. The rule goes far deeper than that. It is applicable in every case in order to secure and maintain the impartial administration of justice.

> Upon no courts is the obligation to enforce these principles of public policy greater than upon the courts of bankruptcy of the United States. The object of Congress in enacting the bankruptcy laws was to secure the efficient and fair administration of estates. The one thing, perhaps more than all others, which creditors and bankrupt alike have the right to expect from those having official duties to perform relating to the property of the estate, is disinterestedness in its disposition and liquidation.

In *Donovan & Schuenke v. Sampsell*, 226 F.2d 804 at 811 (9th Cir.1955), *cert. denied sub nom. Freedman v. Donovan & Schuenke*, 350 U.S. 895, 76 S.Ct. 152, 100 L.Ed. 787 (1955), the court endorsed the *Frazin & Oppenheim* rule as follows:

> Property in custody of a court of bankruptcy has a special status and is sacrosanct. No dealings therein will be tolerated which are tainted with the possibility of unfairness or of conflict between personal desires and trust obligations.

*See also, In re Exennium, Inc.*, 23 B.R. 782 (Bkrtcy.App. 9th Cir.1982); *In re Stephen*, 30 F.2d 725, 726 (S.D.Cal.1928). Indeed, as pointed out in *Exennium, supra* at 787, "[t]his public policy is expressed in 18 U.S.C. § 154, which makes it a misdemeanor for any officer of the court to purchase, directly or indirectly, assets from a bankruptcy estate." [2] The obvious rationale be-

---

**2.** 18 U.S.C. § 154

Whoever, being a custodian, trustee, marshal, or other officer of the court, knowingly purchases, directly or indirectly, any property of the estate of which he is such officer in

hind this policy is not only to protect estates from fraudulent and collusive transactions but to prevent even the appearance of impropriety which might undermine public confidence in the judicial process. *Matter of Combined Metals Reduction Co., supra* at 197.

The question then is whether the purchase of an asset of the estate by a *former* trustee is prohibited by the same restraint. It is.

■ The principles of equity and public policy which prohibits a trustee from purchasing assets of the estate ring with the same clarity with respect to former trustees and other fiduciaries. As noted, the objective of this restriction is to discourage disloyalty by fiduciaries and eliminate a source of public concern over the administration of bankruptcy estates. A trustee by the very nature of his duties has inside, often confidential, information as to the affairs of the debtor and the property of the estate. Possession of that information is not extinguished by his resignation and he cannot sanitize his status by severing his official ties.

Notwithstanding any financial merits of a proposed sale to a former trustee and without taking into account proof of any wrongdoing by a former trustee, such a sale carries with it such a graphic appearance of impropriety that the prudent course for courts to follow is to prohibit the transaction or invalidate its occurrence. *See Donovan & Schuenke v. Sampsell, supra; In re Exennium, Inc., supra*.

### III.

### CONCLUSION

Here Ledbetter was appointed trustee by this court on May 28, 1980. From that date and until his resignation and replacement on October 26, 1982, he was privy to all aspects of the debtor's affairs, including

a case under title 11 [11 U.S.C. §§ 101 et seq.]; or

Whoever being such officer, knowingly refuses to permit a reasonable opportunity for the inspection of the documents and accounts relating to the affairs of estates in his charge

any potential sale of its stock for the purpose of reorganization. While the origin of the negotiations which ultimately led to the Citytrust plan, under which Ledbetter is to purchase a significant portion of the debtor's stock, has not been positively traced to Ledbetter or even to the period when Ledbetter was a trustee, such suspicions are not unwarranted. But that aside, the appearance of impropriety associated with the sale of the reorganized debtor's stock to Ledbetter cannot be overlooked.

Accordingly, I conclude that Ledbetter may not purchase stock in a reorganized Grodel and IT IS SO ORDERED.

by parties in interest when directed by the court to do so—

Shall be fined not more than $500, and shall forfeit his office, which shall thereupon become vacant.