**In the Matter of Lucio F. RUSSO, Bankrupt.**

**Bankruptcy No. 78-B-22-16.**

United States Bankruptcy Court, E.D. New York.

Feb. 15, 1984.

Cadwalader, Wickersham & Taft, New York City, for the Motion; David R. Kittay, New York City, of counsel.

Guggenheimer & Untermyer, New York City, in opposition; Ephraim K. Leibowitz, New York City, of counsel.

John S. Pereira, New York City, Trustee.

MANUEL J. PRICE, Bankruptcy Judge.

This is a motion made by Tina Russo, wife of the bankrupt Lucio F. Russo, ("Russo" or the "bankrupt") to vacate the confirmation of the sale of the trustee's survivorship interest in marital property, to Avery J. Gross, ("Gross") or to the estate of Reuben E. Gross, ("Gross estate") on the ground that Gross was the former trustee in bankruptcy of Russo's bankruptcy estate and therefore a fiduciary who was not qualified to bid thereon. Gross claims that the motion should be denied because he was acting as the executor of his father's estate, which was the bankrupt's largest creditor, when he bid for the interest. He also contends that he breached no fiduciary duty and that there was no exploitation of his relationship with the bankruptcy estate. In addition, he states that Tina Russo has no standing to bring the motion and he also questions her right to invoke the equity powers of the court given her participation in the fraudulent conveyance of the property. A hearing on the motion was held before me, on February 10, 1983, (Transcript "Tr. 2/10/83") at which Gross testified and after which both parties submitted memoranda. The facts are as follows:

This matter is the latest proceeding to determine the rights of various parties pursuant to a bankruptcy petition filed six years ago. On January 5, 1978, Lucio F. Russo, the husband of the movant, filed a

voluntary petition in bankruptcy under the Bankruptcy Act of 1898, as amended, (the "Act"), former title 11 U.S.C. § 22a. Included among the unsecured creditors listed in his Schedule A–3 was Reuben E. Gross, Esq., ("Rueben") with a "disputed" claim of $25,762.77. On January 19, 1978, Reuben filed his Proof of Claim for that amount, which made him Russo's largest creditor. In the proof of claim, he characterized the debt as a "general unsecured claim," and, at the first meeting of creditors, at which he was the only creditor present, he elected his son, Avery, to serve as trustee.

Reuben's claim had been based on a judgment for $25,762.77 which he had obtained on October 24, 1977, in the Supreme Court of the State of New York in Brooklyn, against Russo, for the recovery of attorney's fees arising from services he had rendered to him in a defamation action. (Judgment Index No. 1079/72). The judgment had been docketed the same day with the Clerk of Richmond County, in an apparent effort to create a lien against property at 82 Romer Road, Staten Island, New York, (the "Romer Road property") which the bankrupt and his wife, Tina Russo, owned as tenants by the entirety. *See Matter of Russo,* 18 B.R. 257, 261 (Bkrtcy.E.D. N.Y.1982). On December 8, 1977, Avery Gross, acting as attorney for his father, had attempted to execute on the judgment, *id.* at 264, but was unsuccessful since, prior to the time the judgment was docketed, Russo and his wife Tina, had conveyed all of their interest in the property to her alone. *Id.* at 261. The preliminary state court proceedings which were commenced by Gross, in the effort to set aside the conveyance as fraudulent, were stayed as a result of Russo's filing a voluntary petition in bankruptcy on January 5, 1978.

Later in 1978, Reuben E. Gross died. His will provided that his son Avery serve as primary executor of his estate, and it named him as a direct and residuary legatee. *Id.* at 260. Implicit as one of the assets of the estate was the judgment for $25,762.77 against Russo.

On May 12, 1978, as Russo's trustee in bankruptcy, Gross initiated an action to set aside the conveyance of the Romer Road property as fraudulent under section 70e(1) of the Act, former 11 U.S.C. § 110e(1) and New York State Debtor and Creditor Law. I held, in that case, that the conveyance was "null and void as against the trustee" and that the interest therefore passed to the bankrupt's estate. *See In re Russo,* 1 B.R. 369, 383 (Bkrtcy.E.D.N.Y.1979); *affirmed* Bkrtcy. No. 78–B–22, slip op. (E.D. N.Y. September 11, 1980). I ordered that the tenancy by the entirety be restored and that Tina Russo reconvey the Romer Road property to Lucio F. Russo and herself. *Id.* at 386. On July 2, 1981, after considerable delay, and the issuance of a contempt citation against her for her failure to obey an order of the court directing her to do so, she delivered the deed to the trustee, which he recorded on August 5, 1981. *See Matter of Russo,* 18 B.R. at 262. Thus Gross, as trustee in bankruptcy, succeeded to the interest in the Romer Road property, which had been Russo's right of survivorship in the tenancy by the entirety. *Id.*

In the meantime, on June 15, 1981, Russo had initiated a motion by an order to show cause, demanding that Gross be removed as trustee because of certain alleged conflicts of interest. The motion was argued on August 7, 1981 and on March 10, 1982 it was granted because of what I perceived to be incompatibilities, demonstrated by the particular facts, between Gross's duties as trustee for all the creditors of the bankruptcy estate, and his duties as executor of his father's testamentary estate. *Id.* at 271–273. Specifically, I noted that Gross had failed to make a timely determination of all the liens on the property and to avoid the lien which had attached with his father's docketing of the judgment in October of 1977. *Id.* at 272. In addition, I noted that in his application for appointment as attorney for the trustee, Gross had failed to disclose his personal interest, based on his testamentary executorship and his beneficiary status under his father's will. Finally, I noted that Gross had attempted to abandon his interest in the Romer Road property

after it was conveyed to him. He maintained at that time, that the bankrupt's interest in the premises was subject to certain liens in favor of his father and was, therefore, worthless. *Id.* at 263. He also maintained that the interest was of "minimal" and "limited" value because of the asserted unlikelihood that Russo would survive his wife based on the two year difference in their ages. Although his application was subsequently withdrawn, I found this to have been his most egregious error of judgment in his capacity as trustee; I construed his attempt as an effort to free the property in order to enforce the judgment of the elder Gross. *Id.* at 272–273.

In granting Russo's motion to dismiss Gross as trustee, I indicated that a previous denial of his discharge pursuant to section 14c(2) of the Act, 11 U.S.C. § 32c(2), for his failure to keep adequate records, *Matter of Russo,* 3 B.R. 28, 36 (Bkrtcy.E.D.N.Y.1980), did not affect his status as an adjudicated bankrupt and the right of all of his creditors to share equally in his assets, 18 B.R. at 266; I also noted that if Rueben E. Gross had filed his proof of claim as a judgment lienor he would have been precluded under section 56b of the Act, former 11 U.S.C. § 92(b), from participating in the election of the trustee. *Id.* at 260. As it were, I held that since he had chosen to participate in the trustee's election, he had thereby waived the secured status of his claim. *Id.* at 273.

After Gross's removal, John S. Pereira, ("Pereira") was appointed, on March 25, 1982, as successor trustee in bankruptcy, to administer Russo's estate. Thereafter, Tina Russo offered Pereira $2,500 for the survivorship interest in the Romer Road property and he moved this court to conduct a hearing on the offer to see if higher or better offers might be obtained. Notice of the sale was sent to all creditors and, on September 1, 1982, ("Transcript" or "Tr. 9/1/82") I conducted a sale at which only Tina Russo and her attorney, David R. Kittay, Esq., ("Kittay"), and Gross and his attorney, Ephraim K. Leibowitz, Esq., were present to bid. During that proceeding, Kittay urged that Gross be disqualified

from bidding since he had previously been the trustee who had been removed for cause. (Tr. 9/1/82, p. 6) I allowed the bidding to proceed but granted Kittay's request to maintain the status quo with regard to any transfer of the interest and for permission to make a motion to vacate the sale and declare Gross disqualified from bidding. (Tr. 9/1/82, pp. 13–14) There was spirited bidding between Kittay and Gross, until the highest bid of $27,500 was made by Gross. The last bid made by Kittay, on behalf of Tina Russo, was for $27,000. (*Id.* at p. 18) As the successful bidder, Gross was required to deposit a check for $6,875 representing 25% of the total price. *Id.* He paid this with a check drawn on his "special attorney's" account. (Tr. 2/10/83, p. 23)

On September 10, 1982, Tina Russo made a motion, returnable on September 28, 1982, to: 1) declare the sale to Gross void; 2) approve Tina Russo's offer to buy the interest for $2,500, or 3) declare Avery Gross and the Gross estate disqualified from bidding at any subsequent auction, and 4) stay any transfer of title pending a decision on the motion.

Although the Notice of Motion also requested that if the motion was denied in any part, Reuben E. Gross's claim should be subordinated to the claims of all other unsecured creditors, the movant has subsequently conceded that she has no standing to make such a request. (Movant's post-trial Reply memorandum, p. 3 n. 2)

At the hearing on Tina Russo's motion to set aside the sale, Gross testified that he had bid for the property interest on behalf of his father's estate. (Tr. 2/10/83, pp. 22–23) Mrs. Russo asks this court to take notice that Gross failed to obtain leave of the Surrogate's Court to bid for the interest on behalf of the estate, (*id.* p. 30) and that he failed to consult with testamentary beneficiaries about the bid. (*Id.* pp. 10–12) Movant's post-trial memorandum, p. 4. The trustee has taken no position on Gross's qualification to bid, but requests that if Gross is disqualified from bidding on the

property as a matter of law, then the court should approve the bid made on behalf of Tina Russo in the sum of $27,000 which was made by Kittay in open court on September 1, 1982. (Trustee's Answer, dated February 10, 1983)

## DISCUSSION

The only issue to be decided here is whether Gross should be disqualified for having been the former trustee in bankruptcy for the bankrupt's estate.

The movant relies on three decisions, rendered in the Ninth and Second Circuit Courts of Appeals, *In re Exennium, Inc.,* 23 B.R. 782 (Bkrtcy.App. 9th Cir.1982), *rev'd,* 715 F.2d 1401 (9th Cir.1983) on grounds not related to issue of disqualification; *Donovan & Schuenke v. Sampsell,* 226 F.2d 804 (9th Cir.1955), and *In re Frazin & Oppenheim,* 181 F. 307 (2d Cir.1910). Together, they stand for the proposition 'that parties who are or who have been fiduciaries with respect to the debtor's estate, or to the court, are not qualified to bid at the sale of estate property.

In *Donovan & Schuenke* the court reversed the order of the District Court affirming an order of a Referee in Bankruptcy refusing to set aside a sale of estate property to a buyer who had been the president of the bankrupt corporation. In *Frazin & Oppenheim* the court held that the appraiser of a bankrupt estate may not, prior to the filing of the appraisal, purchase property of the estate.

The *Exennium* case, which was decided by a Bankruptcy Appellate Panel of the Ninth Circuit, involved the sale of several of the debtor's leases of real property, to its former attorney, held in the bankruptcy court. The owner (lessor) of one of these properties, who had received no notice of the sale, objected to it as it applied to his property and he appealed the confirmation of the sale by the bankruptcy court. The decision points out that the lessor had received no notice of the sale because the attorney, whose qualification to buy he was challenging, had failed to list him as a creditor in the schedules prepared by that

attorney's firm; that only the creditors listed in the schedules had been given notice thereof by the clerk, and that the only publication of the notice was in a legal newspaper.

In holding that the attorney was disqualified and that the sale to him was void, the *Exennium* court explained that its decision was governed by two separate principles: equitable jurisdiction over fiduciary relationships and public policy considerations:

"Two separate principles disqualify persons as buyers from bankruptcy estates. One, equitable jurisdiction over fiduciary relationships, would be present even if there were no court proceeding. When there is a court proceeding, public policy considerations also arise. This distinction is noted in *Donovan & Schuenke v. Sampsell,* 226 F.2d 804 (9th Cir.1955), and in *In re Frazin & Oppenheim,* 181 F. 307 (2d Cir.1910), cited in the former case."

*Exennium, Inc.* 23 B.R. at 786. (The Court of Appeals for the Ninth Circuit specifically noted that its reversal on appeal should not be construed to condone the sale to the former attorney. That issue was not reached. 715 F.2d 1404 n. 5)

The trustee, who had been named as defendant in *Exennium,* had argued that the Bankruptcy Code had no provision to disqualify attorneys who had ceased acting on behalf of debtors. In addition, he asserted the "overriding policy" that the estate realize the greatest economic benefit possible from the sale of estate assets. *Id.* The court rejected this line of reasoning, noting that it had previously held, in *Donovan & Schuenke* that the question of a sale to a fiduciary "does not depend upon the statute relating to bankruptcy nor the principles of bankruptcy law or regulation. Rather, it depends upon ... the established law of equity, which applies to all fiduciaries ...." *Exennium,* 23 B.R. at 787. (Quoting *Donovan & Schuenke v. Sampsell,* 226 F.2d 804, 808 (9th Cir.1955)).

The relevant public policy considerations on which the *Exennium* court relied were

**446**

stated in *Frazin & Oppenheim* over seventy years ago:

"[N]o consideration of public policy is deeper grounded upon fundamental principles—upon principles which reach the very foundations of judicial authority—than that courts and court officers must be disinterested in the management of estates committed to their charge. It cannot be permitted that officers appointed by courts to perform duties regarding property in custody of the law should speculate therein. It cannot be permitted that court officials should use their official positions for personal profit. The question is not one of fraud or good faith, of gain or loss to the estate, in a particular instance. The rule goes far deeper than that. It is applicable in every case in order to secure and maintain the impartial administration of justice.

"Upon no court is the obligation to enforce these principles of public policy greater than upon the courts of bankruptcy of the United States. The object of Congress in enacting the bankruptcy laws was to secure the efficient and fair administration of estates. The one thing, perhaps more than all others, which creditors and bankrupt alike have the right to expect from those having official duties to perform relating to the property of the estate, is disinterestedness in its disposition and liquidation."

181 F. at 310 (*Quoted* in *Exennium,* 23 B.R. at 787).

In addition, the *Exennium* court noted that it was a misdemeanor for "any officer of the court to purchase, directly or indirectly, assets from a bankruptcy estate," at 787. Title 18 U.S.C. § 154 (1982) provides:

"Whoever, being a custodian, trustee, marshal, or other officer of the court, knowingly purchases, directly or indirectly, any property of the estate of which he is such officer in a case under title 11; * *

"Shall be fined not more than $500, and shall forfeit his office, which shall thereupon become vacant."

Thus *Exennium* reaffirmed the Ninth Circuit rule that: "Where the property is in possession of the bankruptcy court, an interested party need only prove that the purchaser was in a trust relationship with regard to the property itself, the creditors of the estate or the officers of the court, to render it void," at 787. (Quoting *Donovan & Schuenke,* at 811).

■ This rule overrides the policy of maximizing economic benefits for the estate: "Even if there were full disclosure, adequacy of consideration, absence of secret profit, an open judicial sale will not avail separately or in combination as a defense for such a fiduciary. The prohibition is absolute in the public interest." *Id.* (Quoting *Donovan & Schuenke,* at 811). The language of *Donovan & Schuenke,* the case on which the *Exennium* court relied, is unequivocal in denying the trustee's qualification to purchase property:

"The considerations of public policy make any person a trustee or fiduciary who has had a connection with any other person or entity or who has been employed or concerned with the affairs of others and thereby acquired a knowledge of the property and concerns of the others. This obligation of the trustee will be enforced by the courts by any methods which are necessary to prevent the appearance of divided loyalties or improper administration.

"The question of whether [such a] sale [is] valid or no is easily answered . . . . A fiduciary cannot purchase property which he is empowered to sell . . . . Property in custody of a court of bankruptcy has a special status and is sacrosanct. No dealings therein will be tolerated which are tainted with the possibility of unfairness or of conflict between personal desires and trust obligations."

*Donovan & Schuenke,* at 811.

■ Particular circumstances, other than the relationship of the buyer to the estate, are irrelevant:

"It is elementary that a fiduciary cannot deal or receive a transfer of the property which is the subject of the trust. It

makes no difference whether the fiduciary be called an agent, custodian, trustee or officer. *It makes no difference whether it can be proved that the fiduciary profited by the transaction.* The principle is established by general law and does not depend upon the existence of a statute for enforcement. To affirm [such a] sale would seem to place a premium on shady dealings in a court of bankruptcy."

*Id.* at 812.

"*Even if there were full disclosure, adequacy of consideration, absence of secret profit,* an open judicial sale will not avail separately or in combination as a defense for such a fiduciary. *The prohibition is absolute in the public interest. It is established to protect the courts themselves from suspicion of chicanery.*" (emphasis added) (footnote omitted)

*Id.* at 811.

In addition, and of particular importance for this matter, the *Exennium* court held that the withdrawal of the attorney before the sale, did not affect his disqualification. *Id.* at 788. It pointed out that in *Donovan & Schuenke* the purchaser had been the former president of the bankrupt corporation but that his resignation, prior to the sale, had been found irrelevant. *See Donovan & Schuenke,* at 810 n. 5.

The law in *Donovan & Schuenke* and *Frazin & Oppenheim* has been followed implicitly by the Bankruptcy Court of Nevada, in *In the Matter of Transcontinental Energy Corp.,* 1 B.R. 460, 466 (Bkrtcy.D.Nev. 1979). Citing these cases, the court noted that a trustee could not bid at estate sales but refused to disqualify the buyer at an auction sale because it found he was not a fiduciary. Those decisions as well as *Exennium* have more recently been followed in *In re Grodel Manufacturing, Inc.,* 33 B.R. 693, 696 (Bkrtcy.D.Conn.1983). In *Grodel,* the Bankruptcy Court of Connecticut disqualified a former trustee from purchasing stock of a debtor in possession in a Chapter 11 case under the Code. The *Grodel* decision concluded as follows:

"The question then is whether the purchase of an asset of the estate by a *former* trustee is prohibited by the same restraint [as applies to a present trustee]. It is.

"The principles of equity and public policy which prohibit a trustee from purchasing assets of the estate ring with the same clarity with respect to former trustees and other fiduciaries. As noted, the objective of this restriction is to discourage disloyalty by fiduciaries and eliminate a source of public concern over the administration of bankruptcy estates. A trustee by the very nature of his duties has inside, often confidential, information as to the affairs of the debtor and the property of the estate. Possession of that information is not extinguished by his resignation and he cannot sanitize his status by severing his official ties.

"Notwithstanding any financial merits of a proposed sale to a former trustee and without taking into account proof of any wrongdoing by a former trustee, such a sale carries with it such a graphic appearance of impropriety that the prudent course for courts to follow is to prohibit the transaction or invalidate its occurrence."

*Id.* at 696.

The post-trial memorandum of law, submitted by Gross's attorney ("Respondent's Memorandum") states that Gross was bidding on behalf of his father's estate. Respondent's Memorandum at 4. Since the estate was the major creditor of the debtor, he reasons, the sale is not voidable. To buttress this argument, he points to the absence of case law denying the qualification of a "creditor" to purchase an asset of the bankrupt's estate, *id.* at 5, and attempts to distinguish the facts of this case from those of *Exennium:*

"[I]n purchasing the Property for the Estate, [Gross was] acting in the interests of creditors who otherwise would not have received any dividend from this 'no asset' estate.

"In the case of *In re Exennium, Inc.,* . . . there were abuses of the court position that [the buyer] held as attorney for the debtor and debtor in possession that

would and should have precluded him from bidding on the leasehold interests and other assets."

*Id.* at 6.

Gross argues that unlike the buyers in the other cases, Reuben Gross's estate, which he urges I deem the real purchaser here, held a judgment against the debtor prior to the bankruptcy. *Id.* at 7. Furthermore, the estate was "not using the prior position of its executor to speculate or profit from the sale ... [but] only trying to satisfy its judgment from the only known asset available to it." *Id.* at 7. Unlike the situation in *Exennium,* he argues, here there was no "self-dealing" and no exploitation of the knowledge he had obtained while serving the estate as trustee: "No knowledge of the Property's potential value resulted from [his] former role as trustee. He was aware of the existence of the Property as a result of being a resident of Staten Island and by having his law office in that County." Respondent's Reply Memorandum, at 1–2.

The respondent does acknowledge, somewhat begrudgingly, that "obiter dicta," in *Donovan & Schuenke,* "seems to suggest that whenever property is in the possession of the bankruptcy court (regardless of full disclosure, absence of secret profit or an open judicial sale), an interested party can move to set aside a sale, by establishing that the purchaser has or had a trust relationship regarding the property, the creditors or officers of the court." *Id.* at 2. According to Gross, however, "Tina Russo is not an interested party," *id.,* and therefore she has "no standing," because "she is not a creditor of the bankrupt" and "[h]er connection with this matter is merely that of the unsuccessful bidder of the Property." Respondent's Memorandum at 11. In addition, Gross makes the argument that if he is disqualified from bidding so should Tina Russo who "also has a trust relationship to the Property," Respondent's Reply Memorandum at 3, by virtue of the fact that her "joint ownership [of the property] imposes a responsibility of care and maintenance of the sole asset of the bankrupt estate." *Id.*

Finally, he maintains that application of *Exennium* to this case will have a "chilling effect" on future bankruptcy sales to creditors who are frequently the only bidders at such transactions. *Id.* at 5. This argument rests on the premise that it was Reuben Gross's estate and not Gross who was the real purchaser. Gross does not address the fact that he paid the deposit of $6,875 with a check drawn on his personal account and not on the estate account, the existence of which he admitted during the February 10, 1983 hearing. (Tr. 2/10/83, p. 23)

■ I do not find the respondent's arguments convincing. As he admits, the law set forth in *Donovan & Schuenke* and *Exennium,* as it derived from the Second Circuit case of *Frazin & Oppenheim,* and as it has been followed in more recent decisions, requires that fiduciaries and former fiduciaries be disqualified from bidding at the sale of estate property. Since there is no question that trustees are fiduciaries for the bankruptcy estate, and for the court, *In re Combined Metals Reduction Co.,* 557 F.2d 179 (9th Cir.1977); *Matter of Shen,* 7 B.R. 942, 947 (D.C.S.D.Cal.1980); *In re Grodel Manufacturing, Inc.,* 33 B.R. 693, 694 (Bkrtcy.D.Conn.1983), they are disqualified from purchasing at sales of estates for which they served. The law requiring disqualification extends to *former* trustees in order to assure the appearance of propriety and the just administration of the courts and the estate. In this respect it does not matter that Gross did not exploit his prior relationship; that he gave good consideration; that he purchased the survivorship interest without the intention to speculate on it, or that other creditors would benefit from a sale to him. For that matter, it is even irrelevant that Gross was discharged from his former position because of conflicts of interest between his duties as trustee and his obligations as executor of his father's estate; although his disqualification under such circumstances seems particularly just, as it has developed from *Frazin & Oppenheim,* the rule is that trustees, and former trustees, must be disqualified as a matter of law and, therefore, Gross would

have to be disqualified even if he had not been removed for cause.

Gross attempts to avoid disqualification by arguing that he acted as the executor of his father's estate. This argument is not persuasive. For one thing, it is not clear that Gross was purchasing as executor since he made his 25% deposit with a check drawn on his personal rather than on the estate account; there is no proof other than his post-auction assertion at the hearing on the motion, that the purchase was for the benefit of his father's estate. More importantly, however, it does not matter in what capacity he made the bid since the public policy against allowing former trustees to purchase assets of estates for which they have served, precludes sales to former trustees acting as agents for creditors or other buyers at such sales. A finding to the contrary would easily permit collusion between creditors and former trustees and it would allow former fiduciaries to profit from their previous relationship to the estate. Although it is not required that the court look behind every sale to make sure that purchases are not being made with the assistance of former fiduciaries, the public policy considerations stated in *Frazin & Oppenheim* and its progeny do require that where they are found, trustees should be disqualified. Although the respondent is correct in stating that creditors are frequently the only purchasers at estate sales, I do not agree that they will be chilled by upholding the rule against sales to fiduciaries or former fiduciaries.

Gross also attempts to avoid the rule against sales to former fiduciaries by contending that Tina Russo is not an "interested" party. I fail, however, to see how she is anything but an interested party. So long as Gross holds a survivorship interest in the Romer Road property, she has but limited control of the marital estate; she cannot convey it outright or pass it on to her children unless Lucio Russo predeceases her. For all of the foregoing reasons, I must therefore void the sale of the survivorship interest to him.

Having found that Gross is disqualified from bidding at the sale, I do not find, however, that the survivorship interest should automatically pass to Tina Russo for either $2,500 as she would have it or for $27,000 as the trustee contends. On the other hand, I do not agree that she should automatically be disqualified either on the ground that she is a fiduciary of the Romer Road property by virtue of being in possession of it or on the ground that she participated in the fraudulent conveyance to herself. The respondent provides no support for his theory that Tina Russo is a fiduciary for the estate property because she is a tenant by the entirety, and while it is true that she is not innocent of wrongdoing insofar as she participated in the fraudulent conveyance to avoid Rueben Gross's lien, I do not find her previous action sufficient to disqualify her from future sales of the survivorship interest. More precisely, however, her qualifications are not at issue here. During the hearing of February 10, 1983, I agreed to allow time for the movant's attorney to submit papers on the issue of Gross's right to bid at the sale. In view of the procedural posture of this matter, I find that the only real question to be decided here is Gross's qualification—not the moving party's or the estate of Reuben E. Gross. Since I find that the law requires, as a per se rule, that trustees, and former trustees, be disqualified from bidding at sales of bankruptcy estate assets, I cannot confirm the sale of the interest in the Romer Road property to Avery J. Gross but must instead void the sale. The successor trustee must, therefore, return the respondent's deposit and he is directed to submit an order providing for a new sale. Objections, by interested parties, may be made to any bidding at that time.

IT IS SO ORDERED.