In re FRAZIN & OPPENHEIM.

(Circuit Court of Appeals, Second Circuit. August 16, 1910.)

No. 303.

1. BANKRUPTCY (§ 263*)—SALE OF ASSETS—PURCHASE BY APPRAISER—STATUTES.

Neither an appraiser of a bankrupt nor his attorney for his benefit may purchase the bankrupt's assets at a public sale thereof, both because by public policy he is as a matter of law incapable of purchasing and under Bankr. Act (Act July 1, 1898, c. 541, 30 Stat. 565 [U. S. Comp. St. 1901, p. 3451]) § 70b, providing that all real and personal property belonging to bankrupts' estates shall be appraised by three "disinterested" appraisers to be appointed by and to report to the court.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 366; Dec. Dig. § 263.*]

2. BANKRUPTCY (§ 269*)—INVALID SALE—VACATION.

Where, after an invalid sale of a bankrupt's assets to an appraiser, the property was sold to a corporation in which the bankrupts' wives and the appraiser had the controlling interests, the sale would be set aside and the trustee invested with the title to the business and stock on hand, though some of the stock had been sold in the usual course of business and new stock purchased to take its place; the purchasers being restored to their original situation as nearly as possible.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 370; Dec. Dig. § 269.*]

3. BANKRUPTCY (§ 269*)—SALE OF ASSETS—INTEREST OF TRUSTEE—EVIDENCE.

Evidence held to warrant a finding that a bankrupt's trustee had no individual interest in the sale of the bankrupt's estate.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 370; Dec. Dig. § 269.*]

4. BANKRUPTCY (§ 365*)—TRUSTEE—ACCOUNTING.

A bankrupt's trustee was not bound to account for profits made by a corporation in which he was a stockholder on goods sold by the corporation to the receivers of the bankrupt's estate, of which he was one, in the ordinary course of business and in good faith, with the approval of the co-receiver.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 565; Dec. Dig. § 365.*]

Petition to Review Order of the District Court of the United States for the Southern District of New York.

In the matter of bankruptcy proceedings of Louis Frazin and Abraham Morton Oppenheim, as partners. On petition of Robert C. Morris, trustee, to review an order of the District Court of the Southern District of New York, confirming a sale of the bankrupt's assets. Reversed and remanded for further proceedings.

See, also, 174 Fed. 713.

No finding of facts appears in the record. The facts hereafter stated, however, are not disputed, and formed the basis of the action of the District Court which is sought to be reviewed in this proceeding.

Early in September, 1909, John Hoerle, Clifford Ludvich, and I. V. Rosenbach were appointed appraisers of the bankrupt estate of the firm of Frazin & Oppenheim. On September 25, 1909, the appraisers signed an appraisal of

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the contents of one of the stores belonging to the estate, located at Sixth avenue and Twenty-Second street, New York City, as follows:

| | |
|---|---|
| Stock ................................................. | $10,662 20 |
| Fixtures .............................................. | 1,295 30 |
| Total ............................................. | $11,957 50 |

On September 28, 1909, said appraisers signed an appraisal of the leases of said store, fixing the value thereof at $4,400. On October 1, 1909, said appraisals were filed with the referee in bankruptcy. On September 28, 1909, said John Hoerle—one of the appraisers—entered into an agreement in writing with Sallye Frazin and Rose Oppenheim, the wives of the bankrupts, for the purchase from the trustee of said estate of the stock, fixtures, and leases of said store, wherein said Hoerle agreed, in substance, to produce a purchaser for said property at the trustee's sale thereof advertised to be held on September 30, 1909, provided the same could be secured at a price not exceeding $40,000, and also provided said wives of the bankrupts would repurchase from such purchaser at a price 10 per centum in advance of the price paid to the trustee, and wherein said wives agreed to repurchase at the advanced price stated and to pay the same within six months from the date of the trustee's sale. The agreement also contained provisions concerning the formation of a corporation which might repurchase, instead of the wives of the bankrupts, the control of such corporation by Hoerle pending the payment of the price with interest, the employment of one of the bankrupts as manager, the furnishing of collateral, etc. The parties had negotiated for several days at least regarding this agreement—which was most elaborate in its provisions—before it was signed.

Hoerle arranged with one Struse, a lawyer, to bid for the property at the trustee's sale which was to be by auction. Accordingly at the sale—held on September 30, 1909—Struse bid $28,350 for said property, and his bid was accepted and the sale subsequently confirmed. The testimony is not entirely clear regarding Struse's interest in the transaction. He testifies that he was equal partner with Hoerle. Hoerle testifies that Struse acquired no interest in the matter until after he had made the purchase; that he got Struse to do the bidding because he was a lawyer, and because he considered it improper for him (Hoerle) to bid because he was an official appraiser.

Of the purchase price at the sale $5,000 was obtained from the wives of the bankrupts on account of their agreement, and the remainder was supplied by Hoerle, who obtained $12,937.50 thereof from Joseph H. Wichert, the trustee of the bankrupt estate, in payment, to the extent of $12,900, of an alleged loan from Hoerle to Wichert. The amount obtained from Wichert was just one-half the balance required after deducting the $5,000 payment from the purchase price plus an item of rent falling due at that time.

An application was made to the District Court to set aside the aforesaid sale, upon the ground, among others, that it was invalidated by the fact that Hoerle was an official appraiser of the estate. The District Court denied the motion. This petition is brought for the revision of the aforesaid action of the District Court, and also for the revision of its action in other matters affecting said bankrupt estate. The facts relating to such other claims for relief are considered so far as necessary in the opinion.

Seldon Bacon and Guthrie B. Plante, for petitioner.

Montague Lessler, for respondents Frazin et al.

J. T. Smith, for respondents Wichert et al.

James C. Church, for respondents Struse & Hoerle.

Augustus H. Skillin, pro se and for receivers.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

NOYES, Circuit Judge (after stating the facts as above). The question of primary importance in this case is whether an official ap-

praiser of a bankrupt estate may, prior to the filing of the appraisal, purchase property of the estate. The District Judge held that he has a perfect right to become a purchaser, and the correctness of this ruling is presented as a question of law upon this petition for revision.

It is a long-established principle of equity jurisprudence that a trustee cannot become a purchaser of the trust estate. And not only trustees, strictly speaking, but agents, attorneys, and all persons acting in behalf of other persons and obtaining confidential information concerning their affairs, cannot purchase their property, except under certain restraints not necessary to be considered here. Lord St. Leonards thus stated these elementary principles in his treatise on Vendors and Purchasers (Sugden on Vend. and Purch. [2d Am. Ed. from 5th London Ed.] p. 422), and his statement has many times been quoted with approval by judges and text-writers:

"It may be laid down as a general proposition that trustees, unless they are nominally so, as trustees to perserve contingent remainders, agents, commissioners of bankrupts, assignees of bankrupts, solicitors to the commission, auctioneers, creditors who have been consulted as to the mode of sale, or any persons who, by their connection with any other person, or by being employed or concerned in his affairs, have acquired a knowledge of his property, are incapable of purchasing such property themselves, except under the restrictions which will shortly be mentioned; for, if persons having a confidential character were permitted to avail themselves of any knowledge acquired in that capacity, they might be induced to conceal their information, and not to exercise it for the benefit of the persons relying upon their integrity. The characters are inconsistent. 'Emptor emit quam minimo potest, venditor vendit quam maximo potest.' "

The application of these principles is not dependent upon the engagement of one person by another in a confidential capacity. There need be no contract of employment at all. There need be no formal relation of trust. The disability grows out of the duty. In our opinion the rule of equity should be so broadly applied as to embrace all persons who have a duty to perform with respect to the property of others and with the proper performance of whose duty the character of a purchaser of such property may be in any degree inconsistent.

In King v. Remington, 36 Minn. 15, 26, 29 N. W. 352, 358, the Supreme Court of Minnesota said:

"Nor is the application of the rule confined to a particular class of persons as guardians, solicitors, attorneys, etc. It applies universally to all who come within its principle, which principle is that no party can be permitted to purchase an interest in property and hold it for his own benefit, where he has a duty to perform in relation to such property which is inconsistent with the character of a purchaser on his own account and for his individual use."

See, also, Michoud v. Girod, 4 How. 503, 11 L. Ed. 1076; Gardner v. Ogden, 22 N. Y. 327, 78 Am. Dec. 192; Tracy v. Colby, 55 Cal. 67; York Buildings Associations v. Mackenzie, 3 Paton, 378; Ex parte Hughes, 6 Ves. 617; Ex parte James, 8 Ves. 337; Oliver v. Court, 8 Prince, 127; Ex parte Burnell, 7 Jur. 116; Poillon v. Martin, 1 Sandf. Ch. (N. Y.) 569.

But there are other considerations underlying these equitable principles where the question is presented whether an officer of a court who has duties to perform with respect to property in the custody of the

court can buy it for his own benefit. These are considerations of public policy. And no consideration of public policy is deeper grounded upon fundamental principles—upon principles which reach the very foundations of judicial authority—than that courts and court officers must be disinterested in the management of estates committed to their charge. It cannot be permitted that officers appointed by courts to perform duties regarding property in custody of the law should speculate therein. It cannot be permitted that court officials should use their official positions for personal profit. The question is not one of fraud or good faith, of gain or loss to the estate, in a particular instance. The rule goes far deeper than that. It is applicable in every case in order to secure and maintain the impartial administration of justice.

Upon no courts is the obligation to enforce these principles of public policy greater than upon the courts of bankruptcy of the United States. The object of Congress in enacting the bankruptcy laws was to secure the efficient and fair administration of estates. The one thing, perhaps more than all others, which creditors and bankrupt alike have the right to expect from those having official duties to perform relating to the property of the estate, is disinterestedness in its disposition and liquidation.

The requirement of disinterestedness appears in the very section of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 565 [U. S. Comp. St. 1901, p. 3451]), relating to the appointment and duties of appraisers. Section 70b provides:

"All real and personal property belonging to bankrupt estates shall be appraised by three disinterested appraisers; they shall be appointed by, and report to, the court. Real and personal property shall, when practicable, be sold subject to the approval of the court; it shall not be sold otherwise than subject to the approval of the court for less than seventy-five per centum of its appraised value."

An appraiser must be primarily a disinterested person. He must report to the court. In certain contingencies the amount of the appraisal determines the validity of the sale. In all cases the values are of the utmost importance in determining the question of the confirmation of the sale.

The nature of the position of an appraiser is such that he necessarily obtains confidential information concerning the cost of the property to be appraised and concerning many other matters affecting its value and the price to be obtained for it. His duty is to appraise it at a fair and reasonable value, for, if it is sold not subject to the approval of the court, only such an appraisal will afford protection to the estate. But a report of the value of property to be sold, made by a prospective bidder for it, could hardly be considered a reliable guide for the action of the court. Would an appraisal be implicitly relied upon in which the appraiser reported that the property was of the value of $16,000, but that he had entered into an agreement to bid $40,000 for it?

In our opinion both the principles of equity and the considerations of public policy, which we have examined, apply in the case of an appraiser of a bankrupt estate. The former apply because the duties which he is required to perform in relation to the property of the es-

tate are inconsistent with the character of purchaser upon his own account. The latter apply because he is an officer of the court, and cannot be permitted to assume a position where he might profit from the abuse of office.

Whether an appraiser after filing his report might be regarded as so far functus officio that he could become the purchaser of the property of the estate need not be determined here. For manifest reasons, there would be less objection to such a purchase than to one made while the duties of the appraiser were uncompleted. On the other hand, it may be that the underlying principles of public policy go so far as to disable an official appraiser from purchasing from the estate at any time property which he has valued. In the present case the property was actually purchased in behalf of the appraiser before the appraisal was filed with the referee. The date of the appraisal of the lease is the date of the elaborate agreement between the appraiser and the bankrupts' wives for purchasing and reselling the property. It is admitted that there were earlier negotiations and the date of the appraisal of the stock and fixtures is only three days before the date of such agreement. We are fully satisfied from the record that the appraiser was negotiating with respect to the purchase of the property before he signed the appraisals.

Upon these facts, we are of the opinion that the appraiser, Hoerle, was as a matter of law incapable of purchasing the property in question at the trustee's sale.

The fact that the purchase was made through Struse is not of importance if he were Hoerle's agent—which seems to have been the real situation—or if, as he himself claims, he was interested jointly with Hoerle in the transaction. In either case he was affected equally with Hoerle by the disability attaching to the latter. Tracy v. Colby, supra; Michoud v. Girod, supra; Gardner v. Ogden, supra; 2 Pom. Eq. Jur. § 958.

Nor is it of importance whether the price paid at the sale was adequate. As already indicated, the application of the rules of equity and consideration of public policy which we have examined is not dependent upon the question of fairness or unfairness in price. See Michoud v. Girod, supra, and other cases just cited. Moreover, we are not altogether convinced of the fairness of the price paid by Hoerle—$28,350. It did, indeed, largely exceed the valuation which he in the capacity of appraiser placed upon the property, but it fell far short of the $40,000 which he, in the capacity of prospective purchaser, entered into the agreement with the bankrupts' wives to bid for it.

We reach, then, the conclusion that the sale of the property, both with respect to Hoerle and Struse, was invalid. And, while the bankrupts' wives have acquired interests in such property under their contract with Hoerle, we are clearly of the opinion that the sale was invalid as to them also. The bankrupts had knowledge of Hoerle's position as appraiser. They acted as their wives' agents in the transaction with him, and their wives are chargeable with their knowledge.

The sale of the property being invalid, the next question relates to the relief to be afforded. Here we are met with a practical difficulty. The sale took place on September 30, 1909. The purchasers have carried on business since that time; have sold stock then on hand; have purchased new stock; and have so changed the situation that, in case the sale be set aside, it will be difficult to restore the parties to their original situation. But these conditions would undoubtedly arise in any case where an officer should unlawfully purchase a stock of merchandise and carry on business pending protracted legal proceedings. And, if the fact that the purchaser by his own acts has brought about a complicated situation is to lead to a denial of full relief, the right to petition this court to review the validity of a completed sale is of little value. We think it our duty to set aside the sale in question and to leave it to the District Court to restore the parties, so far as practicable, to their original situation. Manifestly the lease, fixtures, and unsold stock must be restored to the trustee. So the trustee is entitled to the value of the stock which has been disposed of. On the other hand, upon restoring and accounting for the property, the respondents would be entitled to the return of the purchase money. But what the precise situation is which now exists does not appear upon the record, and we expressly refrain from going into details, and leave the matter of adjustment—at least in the first instance —to the District Court.

The remaining substantial contentions of the petitioner relate to the relations of the trustee Wichert to the bankrupt estate.

It is contended in the first place that Wichert should, together with the other respondents, be held to make good any loss arising from the sale to Hoerle. The petitioner is justified in contending that there are suspicious circumstances tending to connect Wichert with this sale. The fact that Hoerle obtained a part of the purchase money from him is not explained entirely satisfactorily by the testimony. The District Judge, however, has found in effect that Wichert acted in entire good faith, and had no interest in the purchase. Upon this petition for revision, we cannot question this finding of fact, and must deny this measure of relief asked for against the respondent Wichert.

It is next contended that said Wichert should be held to account for the profits of the corporation of Wichert and Gardner upon shoes sold to the receivers of said bankrupt estate—he being at the time of such transactions one of the receivers.

The purchases in question were made in good faith with the approval of Mr. Merrill, the co-receiver, and we know of no principle upon which a receiver, under such circumstances, is obliged to account for profits made by a corporation in which he is a stockholder.

Objection is also made to the compensation awarded Wichert as receiver; and it is further claimed that he, together with the other respondents, should be punished for contempt of court. It is sufficient to say, with respect to these contentions, that we think no question of law is presented regarding them, and nothing else can be determined upon this petition for revision.

The order of the District Court in so far as it denied the motion to set aside the aforesaid sale is reversed with costs, and the cause remanded for further proceedings in accordance with this opinion.