In re ALLIED GAMING
MANAGEMENT,
INC., Debtor.

Bankruptcy No. 95–51270.

United States Bankruptcy Court,
W.D. Louisiana,
Lafayette–Opelousas.

June 3, 1997.

Pamela Magee, Baton Rouge, LA, for Catahoula Gaming.

Paul DeBaillon, Lafayette, LA, trustee.

Douglas Dodd, New Orleans, LA, for trustee.

Douglas Draper, New Orleans, LA, for Delta Gaming.

William Patrick, Baton Rouge, LA, for ACM Gaming Co.

Michael Betts, Baton Rouge, LA, for Prime Leasing.

## REASONS FOR DECISION

GERALD H. SCHIFF, Bankruptcy Judge.

On October 13, 1995, Allied Gaming Management, Inc. ("Debtor"), filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code and on that day an order for relief was duly entered. The Debtor remained in possession of its assets as a debtor in possession until the court ordered the United States Trustee to appoint a chapter 11 trustee. Paul N. DeBaillon ("Trustee") is the duly appointed, qualified and acting chapter 11 trustee.

While three separate plans of reorganization have been filed in this chapter 11 case, one has been withdrawn and only 2 are pend-

ing. A creditor, Delta Diversions, Inc. ("Delta"), together with an entity identified as ACM Gaming Company are the proponents of one plan—which will be referred to herein as the Delta Plan, while a corporation known as Catahoula Gaming of Louisiana, Inc. ("Catahoula"), is the proponent of the other plan—which will be referred to as the Catahoula Plan. A minority of the stock of Catahoula will be owned by several employees or former employees of the Debtor. Catahoula's majority shareholder will be Robert Sydney Crawford who will own some 87% of the Catahoula stock.

As required by the Code, a disclosure statement has been filed in conjunction with each plan. A hearing on the adequacy of the disclosure statements was commenced on April 17, 1997. The court heard the objections to each disclosure statement and ordered each plan proponent to make certain amendments thereto. Such modifications have now been made as the amended Catahoula disclosure statement was filed May 1, 1997 while the amended Delta disclosure statement was filed May 2, 1997.

The court continued the disclosure statement hearings until May 8, 1997, at which time the matter was resumed by telephone conference.

The modified disclosure statements appear to have corrected the informational objections which were raised by the several objections and which had been discussed at the April 17 hearing. The critical remaining issue is whether Mr. Crawford's participation in Catahoula results in the Catahoula Plan being unconfirmable as a matter of law.

Mr. Crawford, a certified public accountant in Lafayette, Louisiana, is no stranger to the Bankruptcy Court for the Western District of Louisiana. He has appeared in many proceedings in various capacities—accountant to debtors in possession, accountant to trustees, and as a manager-type, offering more than just accounting services and expertise.

In this case, Mr. Crawford has worn several hats. Initially, when the Debtor was in possession, he was employed as the Debtor's accountant. Subsequently, and after Mr. De-

Baillon was appointed as chapter 11 trustee, Mr. Crawford remained as the trustee's accountant, and, in addition, his role was expanded to include services as general manager.

As the approval of the adequacy of a disclosure statement is an absolute prerequisite to soliciting acceptances or rejections of a plan of reorganization [11 U.S.C. § 1125(b)], a plan is in limbo until such approval is obtained. A body of jurisprudence has developed which suggests that notwithstanding adequate disclosure of information required by section 1125(b), a disclosure statement should not be approved if the proposed plan, as a matter of law, cannot be confirmed. *See, e.g., In re Curtis Center Limited Partnership,* 195 B.R. 631 (Bkrtcy.E.D.Penn. 1996); *In re Eastern Maine Electric Co-op., Inc.,* 125 B.R. 329 (Bkrtcy.D.Me.1991); *In re 266 Washington Associates,* 141 B.R. 275 (Bkrtcy.E.D.N.Y.1992); *In re Bjolmes Realty Trust,* 134 B.R. 1000 (Bkrtcy.D.Mass. 1991); *In re Atlanta West VI,* 91 B.R. 620 (Bkrtcy.N.D.Ga.1988); *In re Monroe Well Service, Inc.,* 80 B.R. 324 (Bkrtcy.E.D.Pa. 1987); and *In re Pecht,* 57 B.R. 137 (Bkrtcy. E.D.Va.1986).

The reasoning behind such holding is obvious—the estate should not be burdened (both in terms of time and expense) with going through the printing, mailing, noticing, balloting, and other exercises in the confirmation process where inability to attain confirmation is a *fait accompli.* This court both recognized and applied this jurisprudential rule recently in the case of *In re Cinque, Inc.,* Case No. 96–51316, Western District of Louisiana, where a disclosure statement was not approved where it appeared that the plan could not satisfy the requirements of section 1129(a)(10) of the Bankruptcy Code.

In this case, Mr. Crawford was employed as a professional by both the Debtor and the Trustee. Does such employment disqualify Mr. Crawford from being the major shareholder of a plan proponent? If the answer is "YES", then the court should not approve the Catahoula disclosure statement since the plan could not be confirmed.

Having giving due consideration to the arguments made and authorities cited by the

respective parties, the court makes the following findings of fact and conclusions of law:

### 1. Mr. Crawford occupied a fiduciary position as accountant and general manager.

■ There is neither doubt nor argument as to whether Mr. Crawford occupied a fiduciary position in his capacity as the accountant employed by the Debtor and later, as the accountant and general manager employed by the Trustee. *In re Q.P.S., Inc.,* 99 B.R. 843 (Bkrtcy.W.D.Tenn.1989). Being a fiduciary, Mr. Crawford thus owed a "fiduciary duty" to the estate, which is defined in Black's Law Dictionary as:

A duty to act for someone else's benefit, while subordinating one's personal interests to that of the other person. It is the highest standard of duty implied by law (e.g., trustee, guardian)

### 2. A fiduciary may not deal with estate property on his own account.

■ An agent and/or employee of a bankruptcy trustee is held to the same fiduciary standards as the trustee. *Mosser v. Darrow,* 341 U.S. 267, 71 S.Ct. 680, 95 L.Ed. 927 (1951). A trustee may not deal on his behalf with property of the bankruptcy estate. *In re Q.P.S., Inc.,* 99 B.R. 843 (Bkrtcy. W.D.Tenn.1989). It logically follows that an agent or employee may not deal with estate property on his own behalf, especially a professional employee retained pursuant to section 327 of the Bankruptcy Code. Neither a bankruptcy trustee nor his agents and/or employees may purchase property of the estate, regardless of whether he in fact profits from the transaction at the expense of the estate. *Id.* at 845. Attorneys, accountants, appraisers, and other agents or employees of bankruptcy trustees may not purchase property of the bankruptcy estate. *Matter of Rahe,* 178 B.R. 801 (Bkrtcy.D.Neb.1995).

■ As Crawford was a professional person employed by the estate and, in addition a fiduciary, he is precluded from purchasing property of the estate. Since Crawford may not purchase assets of the estate individually, the court concludes that an entity in which Crawford is a majority shareholder is similarly precluded from purchasing property of the estate.

### 3. Even if no absolute prohibition exists with respect to Mr. Crawford's participation, an appearance of impropriety would nonetheless exist.

■ The court believes that Mr. Crawford's employment in the case as a professional and his concomitant fiduciary relationship to the estate disqualifies him and entities which he controls from acquiring estate assets through a plan. However, even in the event no absolute prohibition exists prohibiting Catahoula from purchasing estate property, the involvement of Mr. Crawford with the purchaser would create an impermissible appearance of impropriety. In the case of *In re Grodel Mfg., Inc.,* 33 B.R. 693 (Bkrtcy.D.Conn.1983), the court found that a former trustee could not purchase stock in a reorganized company under a proposed plan of reorganization, based upon the appearance of impropriety. The court found that the sale to a former trustee carries with it such a graphic appearance of impropriety that the prudent course was for the court to prohibit the transaction.

The same conclusion must be reached in the instant case. Mr. Crawford not only was compensated for services as a professional person for accounting services rendered to the estate, as general manager he was active in the Debtor's day to day operations, becoming intricately aware of the Debtor's locations, contracts, costs, personnel and other circumstances, and being held out to the public as general manager of an estate in a chapter 11 proceeding. To allow him to take personal advantage of this experience, which obviously placed him in a superior position with respect to competition for these assets, would convey an image to the public of insider dealing, where the system rewards those "good old boys" who are part of the program. The integrity of the system cannot be allowed to suffer by this act.

The following language from the case of *In re Frazin & Oppenheim,* 181 F. 307, 310 (2nd Cir.1910), eloquently espouses the public policy concerns of this court:

[N]o consideration of public policy is deeper grounded upon fundamental principles—upon principles which reach the very foundations of judicial authority—than that courts and court officers must be disinterested in the management of estates committed to their charge. It cannot be permitted that officers appointed by courts to perform duties regarding property in custody of the law should speculate therein. It cannot be permitted that court officials should use their official positions for personal profit. The question is not one of fraud or good faith, of gain or loss to the estate, in a particular instance. The rule goes far deeper than that. It is applicable in every case in order to secure and maintain the impartial administration of justice. Upon no courts is the obligation to enforce these principles of public policy greater than upon the courts of bankruptcy.... The one thing ... which creditors and bankrupt alike have the right to expect ... is disinterestedness....

**4. The circumstance of Mr. Crawford resigning his position with the estate does not cure the problem.**

Mr. Crawford's resignation from his employment with the Trustee as accountant and as general manager of the debtor does not cure the appearance of impropriety. Numerous courts have addressed whether resignation or withdrawal from a fiduciary position affects the fiduciary's ability to deal individually with estate property. *In Matter of Rahe, supra,* the court found that it would undermine the bankruptcy system to allow counsel employed by the Chapter 7 trustee to purchase the debtor's vehicle from the estate. Also, in the case of *In re Exennium, Inc.,* 23 B.R. 782 (9th Cir. BAP 1982), the court found that withdrawal as attorney of record does not affect such disqualification when that attorney attempts to purchase assets of the estate. The court in *Grodel* declared:

The principles of equity and public policy which prohibit a trustee from purchasing assets of the estate ring with the same clarity with respect to former trustees and other fiduciaries. As noted, the objective of this restriction is to discourage disloyalty by fiduciaries and eliminate a source of public concern over the administration of bankruptcy estates. A trustee by the very nature of his duties has inside, often confidential, information as to the affairs of the debtor and the property of the estate. Possession of that information is not extinguished by his resignation and he cannot sanitize his status by severing his official ties.

33 B.R. at 696.

Mr. Crawford obviously obtained inside and confidential information regarding the Debtor which he obtained from the employment by the Trustee and the Debtor. His resignation would not alter this fact. Nor would his resignation cure the appearance of impropriety created by permitting Mr. Crawford, a former professional employee and general manager employed by the Trustee, the opportunity to acquire assets of the estate.

For these reasons, the court finds that the Catahoula Plan is not confirmable as a matter of law, and, accordingly, will enter an order denying approval of the Catahoula disclosure statement.