In re CRESTVIEW FUNERAL
HOME, INC., Debtor.

John Lester Salazar, Plaintiff,

v.

James A. McCormick, et
al., Defendants.

Bankruptcy No. 7–95–11923 MA.
Adversary No. 00–1091 M.

United States Bankruptcy Court,
D. New Mexico.

May 31, 2002.

P. Diane Webb, Albuquerque, NM, for James A. McCormick.

John Lester Salazar, Hobbs, NM, pro se.

## ORDER GRANTING MOTION FOR DIRECTED VERDICT OR IN THE ALTERNATIVE MOTION TO DISMISS OF AAAA AUCTION

MARK B. McFEELEY, Bankruptcy Judge.

THIS MATTER is before the Court after a trial on the merits held the week of March 11–15, 2002. The Plaintiff appeared pro se and presented his case in chief to the Court upon the Complaint and Amended Complaints against the defendants, including Defendant, AAAA Auction ("AAAA") owned and operated by Gary McCormack ("McCormack"), the auctioneer in the bankruptcy case of Crestview Funeral Home, Inc. ("Crestview"). After the Plaintiff rested, AAAA represented by James A. Chavez, moved for a directed verdict, or in the alternative, moved the court to dismiss the Plaintiff's case against it for failure to present sufficient proof of any of the allegations against it (the "Motion"). The Court treated the Motion as a Motion for Involuntary Dismissal in accordance with Federal Rule of Civil Procedure 41 made applicable in Bankruptcy by Rule 7041 of the Federal Rules of Bankruptcy Procedure.

The Court granted the Motion dismissing every allegation in the Complaint except the allegations that AAAA improperly sold personal items of the Plaintiff and did not follow the floor price agreement between McCormack and the Trustee. During the trial, McCormack testified that he as well as two of his contract employees purchased items at the auction, as highest bidders.

In the Complaint, Plaintiff asks this Court to hold AAAA liable for the following allegations against AAAA, which are reproduced here from the original:

> E–25 The defendant hereinabove has violated serveral Bankr.Law's Rules and codes. See Rule 9019(a) Fraud UNCONSCIONABLE ADVANTAGE.
>
> . . .
>
> G–25 Defendant is personally liable to the following, but is not limited to fraud, negligence, concealment, preferential transfers and other applicable law, in damages of $4,024.48, (including approximately $2,000.00.)

Complaint Adv. Proc. No. 00–1091, Bankr. No. 7–95–11923 MA, Document # 1 at ¶¶ E 25–H–25 p. (j.).

The Plaintiff's Amended Complaint states the following allegations against AAAA, which are reproduced here from the original:

> C. Because of the hereinabove Incromation is within the Defendants knowledge and conrol, and Plaintiff is also seeking Declatory relief. Plaintiff requests of this court of full accounting of all items including personal items of John L. Salazar not recorded, but was in the care and control and Knowledge of the Trustee and AAAA AUCTION COMPANY.
>
> D. The Order Approving (Auctioneer) was approved July 10, 1998 for a flat fee of $3,174.38 plus out-of-pocket expenses not to exceed $800.00.... Indeed, James A McCormick paid AAAA Auction Co. the following:

| | |
|---|---|
| Proceeds: | $20,905.00 |
| Buyers Premium | $ 2,090.50 |
| Tax Xollected: | $ 853.55 |
| Auction Cross Total | $23,849.05 |
| | |
| Advertising | $ 342.31 |
| Auctioneers Fee | $ 3,174.38 |
| 10% Buyers Premium | $ 2,090.50 |
| | |
| Total Due the Auctioneer | $ 5,607.19 |

E. Plaintiff, had the following personal items that were not given back to him after giving full proff to trustee, Trustee claimed they were sold at auction as part of estate.

1. One SOLID CHERRY EXECUTIVE DESK, COMPUTOR STAND AND FILING CABINET ALL MATCHING PIECES, bought with my money for my on use as my personal desk. See receipt presented to Trustee. Exhibit

2. Two filing drawer cabinet with my copy written manuscripts of "DEATH AND DYING", "TEENAGE SUISIDE," "SUISIDE NOT'S" the "THE TEN STAGES OF BEREAVEMENT. By John L. Salazar.

3. One Antique Safe, documented as belonging to Plaintiff's Great Grandfather.

4. One four door 1995 Cadilac Limo with my name on the title.

F. Defendant has provided with the bankruptcy court inclomplete records of what was sold at auction. See exhibit's

G. On July 25, 1998 a balance sheet of the acution was provded showing Total Cash form Auction of $14,108.55 and a total of Checks of $9,740.50 for a total of Net Auction Sale = $ 23,849.05 .... [breakdown of individual sheets from auction with totals for each sheet].

AS, There is no explaination of what these item's are, or if there are more than one to each page or if they belong to Palaintiff.

H. Floor prices were only set on the following:

| | |
|---|---|
| Total of Caskets | $4,800.00 |
| Total of Autos | $3,050.00 |

Claiming that the court ordered that a floor price be set by the Trustee, James A. McCormick and the Auctioneer either individually or as total sale. This is not true see transcript. EXHIBIT:

. . .

In re under the rule governing fraud claim: AAAA AUCTION

THESE, BUT NOT LIMITED TO SUFFICIENT FACTS TO GIVE FAIR NOTICE OF PLAINTIFF MUST AT MINIMUM, ALLEGE THE FOLLOWING: . . .

TIME: August 25, 2000

PLACE: Crestview Fuenral Home Inc., 12504 Candelaria N.E. Albuquerque, New Mexico.

CONTENTS OF MISREPRESENTATION UPON WHICH THEY RELIED: ThatT only a floor price would be set pursuant to court order.

AS WELL AS FACTS MISREPRESENTED AS FOLLOW:S: That only AAAA Auction could should shagre $3,174.38 pul out-of pocket expen not to exceed $800.00.

. . .

Defendant is personally liable to the following, but not limited to fraud, Negligence, equitable payments, fraudulent transfer's, preferential transfers, Obstruction of Justice, other aavoidance, actions, and sanctionable activities of estate money an property now rising in damages to:
$125,255.00
$150,000.00
$275,255.00

Several exhibits were attached to the Amended Complaint. The Complaint and Amended Complaint will be collectively referred to as the "Complaint."

The Court took the remainder of the Motion under advisement. Having heard the testimony at trial, examined the evidence presented, observed the candor and demeanor of the witnesses, and considered the arguments of each party, the Court FINDS:

1. Crestview filed a voluntary chapter 11 bankruptcy proceeding on July 5, 1995.

2. A chapter 11 trustee ("Trustee") James A. McCormick, also a defendant in this proceeding, was appointed by the Court on August 27, 1997.

3. The Trustee halted Crestview's business operations and closed the business January 10, 1998.

4. In February 1998, an Appraisal Report was prepared for the Trustee of the mortuary furnishings, equipment and inventory held by Crestview. In the report the appraiser concluded that the equipment had a liquidation value of $15,772.00 and a Fair Market Value of $29,281.00. Exhibit T–12.

5. This case was converted to a chapter 7 bankruptcy on April 17, 1998. Docket No. 464.

6. An Order Approving Motion To Sell At Auction Free and Clear of Liens furniture, fixtures, inventory and miscellaneous items of the bankruptcy estate pertaining to the funeral home business was entered on July 10, 1998. Docket No. 519.

7. Also on July 10, 1998 an Order Approving Application to Employ Professional (Auctioneer) was entered approving the employment of Gary McCormack of AAAA as auctioneer. The order provided that the auctioneer would be compensated by payment of a flat fee of $3,174.38 plus out of pocket expenses not to exceed $800. Docket No. 518.

8. At a hearing on July 2, 1998, the Court ordered the auctioneer to sell four abandoned vehicles belonging to Crestview along with the other property and required the auctioneer to provide a clear record of what was sold at the sale and the price of each item sold. The property auctioned will hereinafter be referred as the "Property."

9. Pursuant to an Order of this Court, McCormack and the Trustee set a floor price of $4,800 for seven caskets and a casket trunk and $2,550 for two limousines and two hearses. The letter stated that the total floor price for the Property was $7,500.[1] Letter Agreement dated July 24, 1998 signed by McCormack and the Trustee, Exhibit T–16; Order Approving Motion To Sell At Auction Free and Clear of Liens, July 10, 1998 Docket No. 519.

9. A public auction was held on July 25, 1998 at which all the equipment was either sold or abandoned to the Trustee. The total amount of sales proceeds from the auction was $23,849.05. Auction Balance Sheet, Exhibit T–20A. Individuals who bought at the auction were given receipts, called tickets, containing a general description of the item purchased and the price paid. Exhibit T–20B.

10. AAAA was paid $3,174.38 as a fee plus expenses of $438.07 for auction services and an additional $361.93 for expenses in connection with preparing the vehicles for the auction. The total payment to AAAA was $3,974.38. Exhibit T–15.

## CONCLUSIONS OF LAW

First, Plaintiff claims that AAAA improperly retained Plaintiff's personal property located on the Crestview premises and sold it along with estate property.

---

1. The Court recognizes that the sum of the floor price numbers is $7,350 and the Court assumes that the total floor price was a rounded number.

Plaintiff asks this Court to order a full accounting of all items sold at the auction. The Plaintiff lists several items that he claims were his personal items sold at the auction: 1) a solid cherry desk with matching return computer stand and filing cabinet; 2) an antique safe; 3) a file drawer cabinet containing three manuscripts written by Plaintiff; and 4) a 1995 Cadillac limousine. Second, Plaintiff alleges that AAAA committed fraud by representing that it would set and abide by a floor price agreement as ordered by the Court. Plaintiff alleges that the auctioneer failed to follow the floor price agreement for the items listed in that agreement. Plaintiff asks this Court to award damages for these improprieties.

1. Sale of Property Plaintiff's Personal Property.

■ On this allegation the Plaintiff offered the following evidence. The Trustee testified that he asked for but did not receive sufficient documentary evidence showing that the cherry desk was not Crestview property. The Trustee stated that unless he had such evidence, he did not release property to anyone from the Crestview premises, except obviously personal items such as family photos. The Plaintiff offered Exhibit No. 80, a copy of a receipt from Office Liquidators for the sale of a desk, file cabinet and computer stand to him. Plaintiff testified that he showed this receipt to the Trustee, but the Trustee refused to release the desk to him. The Trustee testified that he could not determine from this receipt whether Plaintiff used personal or corporate funds to purchase the desk, so without more evidence, he determined it was corporate property available for sale.

The Plaintiff's father, Lester E. Salazar ("Mr. Salazar"), testified that he owned an antique safe that was given to him by his father. He stated that he planned to pass it down to the Plaintiff, and that he was letting the Plaintiff use it in his business at Crestview. The safe was located at the Crestview premises when the Trustee closed the business. Mr. Salazar testified that he did not give the Trustee any documentation showing that he owned the safe. Tr. p. 112 line 25–p. 114 line 1. But, according to Mr. Salazar, he told the Trustee that the safe belonged to him, and the Trustee told him it would be returned. Tr. p. 50 line 17–p. 51 line 8. The safe was sold at the auction. Mr. Salazar testified that he learned of the sale after the auction when the purchaser called him requesting the combination to the safe. Mr. Salazar did not file an adversary proceeding to get the safe back and did not make a demand of the Trustee to return the safe. Tr. p. 128 line 6–line 10. In fact, he did not file any type of pleading to complain of the sale or the actions of the Trustee.

Plaintiff listed three "manuscripts" written by him that he claims were improperly sold in one of the file cabinets. Plaintiff presented no evidence at trial proving the existence or location of these manuscripts.

Plaintiff alleges that the auctioneer sold a 1995 Cadillac limousine that was titled in Plaintiff's name. The only evidence presented concerning a Cadillac limousine was an exhibit offered by the Trustee showing that he turned over a 1979 Cadillac limousine to Phyllis Ferguson Beckaert, the Plaintiff's ex-wife, upon proof of title in her name. Ex. T–30. No Cadillac limousine was listed on the auction report, therefore, the Court finds insufficient evidence that a 1995 Cadillac limousine was wrongfully sold at the auction.

The evidence presented by the Plaintiff is insufficient to hold the auctioneer AAAA liable for selling property not belonging to Crestview. It is the Trustee's duty to

determine ownership of each of the assets, and the Trustee fulfilled this duty by requiring documentation showing that any property claimed was not Crestview property. The auctioneer justifiably relied upon the Trustee to bring to the sale only Crestview property, and the auctioneer sold only the equipment that the Trustee provided, or abandoned to the Trustee property that did not sell. Therefore, the Court will dismiss this allegation with prejudice.

The Court will also deny the Plaintiff's request for a full accounting of the sale. After the sale, the auctioneer provided an accounting of the proceeds received from the sale. No additional accounting is necessary.

### 2. Floor Price Agreement

McCormack and the Trustee entered into a floor price letter agreement (the "floor price agreement") covering several caskets and four vehicles. Ex. 75. The floor price agreement indicated floor prices for the following caskets:

| | |
|---|---|
| Batesville Casket (Blue Sapphire) | $600 |
| Astral .20 Gauge (Brown, extra wide) | $700 |
| Batesville Casket (Wood, Pine) | $200 |
| Batesville Casket (Mandarin Brown) | $500 |
| Batesville Casket (Solid Cherry) | $800 |
| Batesville Casket (Bronze/Blue) | $800 |
| York Casket (Pink/Flowers) | $500 |

Ex. 75.

The total floor price for the seven caskets listed was $4,100.[2] The amount received at the auction for all thirteen caskets was $3,365. The auctioneer testified that the floor price agreement was not followed throughout the auction. He testified that once the overall floor price of $7,500 was met, the auctioneer and the Trustee agreed to allow the auction to proceed without regard to the floor price until all the Property was sold. Tr. p. 331

lines 12–24. In light of the fact that the proceeds of the auction in the amount of $23,849.05 far exceeded the overall floor price and that the Trustee gave permission to continue, the Court finds no basis to hold the auctioneer liable for not following the floor price agreement with respect to the caskets and the vehicles.

### 3. Sale of Items to Auctioneer's Contract Employees.

McCormack testified that he allowed employees whom he had hired on a contract basis to help with this particular sale to bid for items in this sale. Tr. p. 314 lines 10–16. McCormack also purchased items at the auction. He testified that he often allows members of his staff, who were independent contractors, to bid on items. If one of them had the highest bid and the overall floor price for the auction was received, then he saw no problem with this practice. One of AAAA contract employees purchased a 1977 Buick limousine for $600 and a 1978 Buick limousine for $450. Ex. T–20B. Another contract employee purchased two printers for $55 each and some data switchers for $7.50. McCormack himself purchased "orange cones" for $5.00. Ex. T–20B.

There was no allegation in the Plaintiff's Complaint that the auction sale was invalid or voidable because the auctioneer allowed his employees to bid at the bankruptcy sale. This information came to light during the trial. The Court is mindful of its duty to ensure the fair and impartial administration of bankruptcy estates. The Court as overseer of the administration of the bankruptcy estate, is troubled by the auction process in this case. *In re Frazin & Oppenheim,* 181 F. 307, 310 (2nd Cir.1910)(it is the duty of

---

**2.** One of the items listed in the floor price agreement was described as a Church Casket Truck and will not be included as a casket in the Court's discussion.

courts and court officers in managing bankruptcy estates to ensure that the estate is administered by disinterested professionals).

Pursuant to 18 U.S.C. § 154, sales of bankruptcy estate property to a trustee or other officer of the court involved in the case are prohibited.

A person who, being a custodian, trustee, marshal, or other officer of the court—

(1) knowingly purchases directly or indirectly, any property of the estate of which the person is such an officer in a case under title 11; ... shall be fined under this title and shall forfeit the person's office, which shall thereupon become vacant.

18 U.S.C. § 154.

■■■ A bankruptcy trustee owes a fiduciary duty to the bankruptcy estate. As an agent of the Trustee, the auctioneer is held to the same fiduciary standard. *In re Lowry Graphics, Inc.*, 86 B.R. 74, 80 (Bankr.S.D.Tex.1988); *In re Q.P.S., Inc.*, 99 B.R. 843, 845 (Bankr.W.D.Tenn.1989). As a fiduciary of the estate, a bankruptcy trustee and his agents and employees may not purchase property of the bankruptcy estate. *In re Rahe*, 178 B.R. 801, 802 (Bankr.D.Neb.1995), citing *In re Frazin & Oppenheim*, 181 F. at 309 and *Q.P.S., Inc.*, 99 B.R. at 845. "Regardless of whether the trustee of the trustee's agent and/or employee in fact profits from the transaction at the expense of the estate, neither a bankruptcy trustee nor his agents and/or employees may purchase properties of the estate, even for a *fair* price." *Q.P.S., Inc.*, 99 B.R. at 845, citations omitted (emphasis in original). Accordingly, attorneys, accountants, appraisers, and other agents or employees of bankruptcy trustees may not purchase property of the bankruptcy estate. *Rahe*, 178 B.R. at 802 (denying motion for sale of estate property to attorney for the Chapter 7 trustee). *See also, In re*

*Allied Gaming Management, Inc.*, 209 B.R. 201, 203 (Bankr.W.D.La.1997)(accountant for chapter 11 estate not allowed to acquire estate property through reorganization plan); *and In re Q.P.S., Inc.*, 99 B.R. at 845(accountant for debtor in possession may not purchase estate property). As one court noted, "the objective of this restriction is to discourage disloyalty by fiduciaries and eliminate a source of public concern over the administration of bankruptcy estates." *See, In re Grodel Manufacturing, Inc.*, 33 B.R. 693, 696 (Bankr. Conn.1983).

The Second Circuit stated the public policy concerns of this court and its desire not to undermine the integrity of the bankruptcy system:

"The question here is not one of fraud or good faith, of gain or loss to the estate, in a particular instance. The rule goes far deeper than that. It is applicable in every case in order to secure and maintain the impartial administration of justice. Upon no courts is the obligation to enforce these principles of public policy greater than upon the courts of bankruptcy."

*In re Frazin & Oppenheim*, 181 F. at 310.

Here, the auctioneer was an agent of the Trustee. Therefore, the auctioneer owed a fiduciary duty to the bankruptcy estate and should not have purchased property of the estate. Not only is the auctioneer disqualified from purchasing estate property but his employees, even if independent contractors, are also disqualified from purchasing property at a bankruptcy estate auction.

Trustees should not allow this practice because it is prohibited by 18 U.S.C. § 154 and because it casts a shadow of impropriety bankruptcy sales in general. In light of this impropriety, the Court will order the AAAA to forfeit to the bankrupt-

cy estate the fees it received from the estate in the amount of $3,174.38. The Court notes that the Complaint is against "AAAA Auctions" and the Complaint was served on "AAAA Auctions." The attorney for AAAA entered an appearance on behalf of AAAA Auction. However, the Court's Order Approving Employment of Professional (Auctioneer), names Gary McCormack of AAAA Auction as the professional employed as auctioneer. The Court can find no pleading in which AAAA is described as a corporation, partnership or other type of business association. The Court can find no pleading describing AAAA as a trade name under which McCormack does business (d/b/a). Because the Trustee named AAAA as the payee on the checks issued in payment for the auction services, the Court will order AAAA to disgorge the fee of $3,174.38 that it received from the Trustee.

For the above stated reasons, all of the allegations in the Complaint are dismissed for insufficiency of evidence. AAAA is ordered to pay into the Court registry the amount of $3,174.38. The Court will enter a judgment in accordance with this opinion.

I hereby certify that a true and correct copy of the foregoing was either electronically transmitted, faxed, delivered, or mailed to the listed counsel and parties, on the date file-stamped above.